In re the Commitment of Elizabeth M. P.:

Fond du Lac County, Petitioner-Respondent,

v.

Elizabeth M. P., Respondent-Appellant.

Court of Appeals

*No. 02–3221. Submitted on briefs May 15, 2003.—
Decided October 1, 2003.*

2003 WI App 232

(Also reported in 672 N.W.2d 88.)

740

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thomas K. Voss* of *Thomas K. Voss, Attorney at Law, S.C.*, Waukesha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *William J. Bendt*, Corporation Counsel.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Elizabeth M. P. appeals from orders of the circuit court denying her motion for

immediate transfer from inpatient status to outpatient status and her motion for reconsideration of that decision. Elizabeth argues that the hearing pursuant to WIS. STAT. § 51.35(1)(e) (2001–02),[1] to transfer her to inpatient status, was held outside the mandatory ten-day time period and thus the circuit court was without jurisdiction. We agree and reverse the orders of the circuit court.

## FACTS

¶ 2. On November 20, 2001, the circuit court extended the commitment of Elizabeth to the Fond du Lac County Department of Community Programs (County) for treatment of her mental illness from November 4, 2001, until November 3, 2002. The circuit court found Elizabeth incompetent to refuse psychotropic medication and entered an order for involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g) and (h). The court found that Elizabeth was mentally ill and dangerous because she "[e]vidences a substantial likelihood, based on [her] treatment record, that [she] would be a proper subject for commitment if treatment were withdrawn." Elizabeth was committed to the County under WIS. STAT. § 51.42 or § 51.437 for treatment with the Trempealeau County Health Care Center as the designated facility to receive her, which may include a locked inpatient facility as the maximum level of treatment, with a transfer to a group home or community based residential facility within sixty days.

¶ 3. In March 2002, Elizabeth was transferred from a locked inpatient facility to the Bletzinger House, a group home treatment facility. On May 28, 2002, a

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

notice to transfer Elizabeth from outpatient to inpatient status was filed pursuant to Wis. Stat. § 51.35(1). This notice stated that Elizabeth was being transferred from outpatient to inpatient status effective May 28, 2002. The notice also stated that Elizabeth had the right to contact a member of her immediate family, the right to be represented by an attorney, the right to be represented by an attorney at public expense if she was indigent, and the right to request the court to review her transfer within ten days.

¶ 4. An affidavit by the corporation counsel for Fond du Lac county, attached to this notice, indicated that since Elizabeth's outpatient placement she had refused to take her court-ordered medication, had become delusional, argumentative and aggressive, and had failed to take her psychotropic medication as prescribed. The affidavit further indicated that Elizabeth's mental condition had substantially deteriorated, that she was unable to meet the demands of everyday life, and that she had violated conditions of her commitment "in that she has failed to comply with recommended treatment."

¶ 5. That same day, May 28, 2002, the circuit court signed an order directing the sheriff's department or a designated law officer to take Elizabeth into custody at the Bletzinger House and transfer her to the Fond du Lac County Health Care Center's acute unit. The circuit court further ordered that Elizabeth's commitment be transferred from outpatient status to inpatient status until her condition stabilized as determined by her treating physician.

¶ 6. On May 29, 2002, Elizabeth received a "Notice of Transfer from Outpatient to Inpatient Status Chapter 51.35(1)(e)," which advised her of her rights as provided under Wis. Stat. § 51.35(1)(e)1.

743

¶ 7. On June 13, 2002, Elizabeth filed a motion for her immediate release from inpatient treatment, arguing that a hearing to review her transfer to inpatient status was not held within ten days of the transfer, as required by WIS. STAT. § 51.35(1)(e)3. On June 19, 2002, the circuit court denied this motion, finding that the transfer to inpatient status was made pursuant to § 51.35(1)(e)1, not § 51.35(1)(e)3, and that Elizabeth had been properly provided with notice of the transfer. The court further concluded that a transfer under § 51.35(1)(e)1 does not require a hearing within ten days of the transfer. The court also found that Elizabeth had the right to judicial review of her transfer and ordered a judicial review hearing at a future time and date.

¶ 8. On July 8, 2002, Elizabeth filed a motion for reconsideration of this decision, arguing that her transfer was, in fact, done pursuant to WIS. STAT. § 51.35(1)(e)3, not § 51.35(1)(e)1, as indicated by implicit admissions by the corporation counsel. The circuit court denied this motion.

¶ 9. Elizabeth's judicial review hearing took place on July 9, 2002. The circuit court approved the transfer, finding that the least restrictive environment consistent with Elizabeth's needs was inpatient status. Elizabeth appeals from this latter order.

## DISCUSSION

¶ 10. The issue presented is whether the circuit court had jurisdiction to transfer Elizabeth to inpatient status when judicial review of the County's decision to transfer her was not held within ten days as required by WIS. STAT. § 51.35(1)(e)3. The circuit court concluded that a transfer under § 51.35(1)(e)1 does not require a

hearing within ten days of transfer. Resolution of this issue requires that we interpret § 51.35.

¶ 11. Statutory interpretation is a question of law which we review de novo. *State v. Anthony D.B.*, 2000 WI 94, ¶ 8, 237 Wis. 2d 1, 614 N.W.2d 435. The goal of statutory interpretation is to discern the intent of the legislature. *Id.* Therefore, deference with regard to the circuit court's interpretation of the statute is not required. However, we give deference to the circuit court's findings of fact upon which it based its decision. A trial court's findings of fact will be upheld unless clearly erroneous. *State v. Carlson*, 2003 WI 40, ¶ 24, 261 Wis. 2d 97, 661 N.W.2d 51.

¶ 12. Elizabeth makes the following arguments: the County did not have the authority to detain her or transfer her from outpatient to inpatient status; the circuit court lacked jurisdiction to enter its May 28, 2002 order directing her detention and ordering her commitment be transferred to inpatient status; and the circuit court's order for her detention and transfer to inpatient status violated her due process rights. Elizabeth's motions before the circuit court concerned the validity of transfer under Wis. Stat. § 51.35(1)(e)1 without making reference to § 51.35(1)(e)3. On appeal, Elizabeth continues to raise her objection to the court's jurisdiction.

¶ 13. Elizabeth was taken into inpatient status on May 28, 2002. An initial hearing on this transfer from outpatient was held on June 18, 2002. At the hearing,[2]

---

[2] Statutory time periods exclude Saturdays, Sundays and holidays where a statute governs actions and special proceedings, and the period of time prescribed or allowed is less than

Elizabeth argued that the time limits of WIS. STAT.
§ 51.35(1)(e) are jurisdictional and because the hearing
occurred outside of the jurisdictional ten-day time
frame, she should be transferred back to outpatient
status. Meanwhile, the County argued that "[u]nder
[WIS. STAT. § 51.35(1)(e)1], you don't have to have a
hearing within 10 days." The County further argued
that a patient who was originally inpatient and was
transferred to outpatient but then violated certain
terms or conditions of release can be transferred back
to inpatient status without a hearing within ten days
because § 51.35(1)(e)2 allows for a different form of
transfer. Elizabeth, the County argued, had not been
transferred due to violating a term of her release to
outpatient but was transferred because her mental
state had "decompensated." The County argued that as
a result of the above, she was transferred in accordance
with § 51.35(1)(e)1, not § 51.35(1)(e)2.

¶ 14. The circuit court wrestled with its decision
in interpreting the statute, eventually adopting the
County's interpretation as indicated in the record:

> [ELIZABETH'S COUNSEL]: . . . *Lockman v. Gerhard-stein* says the statutes are jurisdictional . . . .
>
> [T]he time limits are jurisdictional whether it's, you know, [WIS. STAT. §] 51.35 or 51.20 or 51.15 . . . .
>
> . . . .
>
> [THE COUNTY]: But clearly, the notice that was given to her by [mental health specialist] Joseph Dum-

eleven days. WIS. STAT. § 801.15. Furthermore, we must calculate time in days, excluding the first day and including the last. WIS. STAT. § 990.001(4)(a). Therefore, the ten-day time frame listed in WIS. STAT. § 51.35(1)(e) for a hearing expired on June 9, 2002.

baskas at the time and the notice of transfer indicated that this was a transfer under (e)1, not under (e)2.

THE COURT: Well, you are reading those separately. But as I look at it, it says: In addition to the rights and requirements specified in subsection 1, within 24 hours after any transfer which results . . . in a greater restriction . . . .

I don't think it's separate. I don't think it's 1 or 2. I think it's 1 and 2.

. . . .

THE COURT: What bothers me, I think, about this statute is the fact that I don't know if it can be interpreted separately, as section 1 is just geared towards a certain situation and then section 2 kicks in on another specific set of circumstances. But that's your argument.

[THE COUNTY]: Right.

THE COURT: You are saying otherwise to one situation and not the other because the other one is confronted with Subsection 2. But it's poorly written because it says, "In addition to the rights and requirements specified in Subsection 1, within 24 hours after any transfer" . . .

[THE COUNTY]: But [it also] says, "If the transfer is due to an alleged violation of a condition of a transfer." That — that's the key to that paragraph.

If you are transferred to inpatient status because there is an allegation that you failed to comply with a condition of transfer from inpatient to outpatient status, in other words, the department transfers you from inpatient to outpatient status and then establishes . . . conditions for you to meet in order to do that, and if you violate one of those conditions and they then transfer

you inpatient, then there is a requirement that you have a hearing within 10 days. And, in fact, you have to waive the hearing, and you can only waive it after consultation with counsel, and you have to waive it in writing with the waiver being witnessed by the patient's counsel. But it is a different set of rights.

Otherwise, what they have is a right for judicial review, ask the court at any time after the transfer . . . . This other hearing that they are talking about is heard by a hearing officer at the level of the department. It's a completely different kind of hearing, and it's certainly not required in every case.

. . . .

THE COURT: The Court feels that under the arguments and presentations made by respective counsel, pro and con, as to the interpretation of [Wis. Stat. §] 51.35(1)(e)3, which is — being the context of [Elizabeth] that this Court lacks jurisdiction, that the motion is denied.

The Court grants the opposing view of the [County] that [Wis. Stat. §] 51.35(1)(e) is applicable and that the notice given by Joseph Dumbaskas, a mental health specialist, was in full compliance with that particular statutory subsection and that the court therefore does have jurisdiction to hear the matter, and [Elizabeth] is entitled to have a hearing on her transfer from the less restrictive placement to the more restrictive placement of being treated inpatient.

We disagree with the circuit court's interpretation of § 51.35(1)(e) as applied to Elizabeth's situation.

¶ 15. Wisconsin Stat. § 51.35(1)(a) allows a department or county department to transfer "any patient . . . who is committed to it, or who is admitted to a facility under its supervision or operating under an agreement with it, between treatment facilities or from

a facility into the community if such transfer is consistent with reasonable medical and clinical judgment and consistent with s. 51.22(5)." Section 51.35(1)(a) further states that such a "transfer shall be made in accordance with par. (e)" and that if the patient is required to take medication as a condition of transfer, the patient or resident "shall be informed at the time of transfer of the consequences of violating such terms and conditions, including possible transfer back to a facility which imposes a greater restriction on personal freedom of the patient or resident."

¶ 16. WISCONSIN STAT. § 51.35(1)(e) states:

1. Whenever any transfer between different treatment facilities results in a greater restriction of personal freedom for the patient and whenever the patient is transferred from outpatient to inpatient status, the department or the county department specified under par. (a) shall inform the patient both orally and in writing of his or her right to contact an attorney and a member of his or her immediate family, the right to have counsel provided at public expense, as provided under s. 967.06 and ch. 977, if the patient is a child or is indigent, and the right to petition a court in the county in which the patient is located or the committing court for a review of the transfer.

2. In addition to the rights and requirements specified in subd. 1., within 24 hours after any transfer which results in a greater restriction of personal freedom for the patient for a period of more than 5 days or any transfer from outpatient to inpatient status for a period of more than 5 days and if the transfer is due to an alleged violation of a condition of a transfer to less restrictive treatment, the department or the county department specified under par. (a) shall ensure that the patient is provided a written statement of the

reasons for the transfer and the facts supporting the transfer and oral and written notice of all of the following:

a. The requirements and rights under subds. 3. to 5.

b. The patient's right to counsel.

c. The patient's right to have counsel provided at public expense, as provided under s. 967.06 and ch. 977, if the patient is a child or is indigent.

d. The rights of the patient's counsel to investigate the facts specified in the written statement of reasons for the transfer, to consult with the patient prior to the patient's waiving a hearing under subd. 3., to represent the patient at all proceedings on issues relating to the transfer, and to take any legal steps necessary to challenge the transfer.

3. Within 10 days after the transfer specified in subd. 2., a hearing shall be held on whether the form of treatment resulting from the transfer is least restrictive of the patient's personal liberty, consistent with the treatment needs of the patient, and on whether the patient violated a condition of a transfer to less restrictive treatment that resulted in a transfer under subd. 2. The hearing shall be held before a hearing officer designated by the director of the facility to which the patient has been transferred. The hearing officer may not be a person who has had direct responsibility for making treatment decisions for or providing treatment to the subject individual. The patient may appear at the hearing, either personally or by counsel, and may present and cross-examine witnesses and present documentary evidence. The hearing may be waived by the patient only after consultation with counsel. Any waiver made shall be in writing and witnessed by the patient's counsel.

4. The department or the county department seeking the transfer has the burden of proving, by a preponderance of the evidence, that the form of treatment resulting from the transfer is least restrictive of the patient's personal liberty, consistent with the treatment needs of the patient, and that the patient violated a condition of a transfer to less restrictive treatment that resulted in a transfer under subd. 2. Hearsay evidence is admissible if the hearing officer makes a determination that the evidence is reliable. Hearsay evidence may not be the sole basis for the decision of the hearing officer.

5. The hearing officer shall, as soon as possible after the hearing, issue a written statement setting forth his or her decision, the reasons for the decision and the facts upon which the decision is based. Within 30 days after the date on which the statement is issued, the patient or the department or the county department seeking the transfer may appeal the decision to a court in the county in which the facility to which the patient has been transferred is located or to the committing court.

6. This paragraph does not apply to a return to a more restrictive facility if the return occurs within 7 days after a temporary transfer from that facility and the return was part of a previously established plan of which the patient was notified at the time of the temporary transfer. This paragraph does not apply to a return of an inmate to a state or county treatment facility under s. 51.20(13)(cm).

¶ 17. On its face, WIS. STAT. § 51.35(1)(e) does not differentiate between transfers made pursuant to subdivisions 1 and 3. In fact, § 51.35(1)(e)3 clearly references subdivision (1)(e)2, which in turn references subdivision (1)(e)1. However, § 51.35(1)(e)1 and (1)(e)2

seem to indicate different forms of transfers.[3] The provisions suggest that while only one transfer provision and its various subdivisions all serve to protect the rights of patients, subdivision 2 exists to further protect the rights of those whose transfer "results in a greater restriction of personal freedom for the patient for a period of more than 5 days or any transfer from outpatient to inpatient status for a period of more than 5 days" where the transfer "is due to an alleged violation of a condition of a transfer to less restrictive treatment." Sec. 51.35(1)(e)2.

¶ 18. Elizabeth's transfer occurred pursuant to WIS. STAT. § 51.35(1)(e)2 because the document affecting her transfer relates the rights that are enumerated in § 51.35(1)(e)3 to 5. The form given to Elizabeth on May 28, 2002, states:

> [Y]ou are being transferred from outpatient status to inpatient status . . . . This transfer places you in a more restrictive setting. Because of this transfer, you have certain rights that are guaranteed to you. Those rights are:
>
> 1. Within 24 hours of your transfer, you are entitled to a written statement of the reasons for your transfer and the facts supporting the transfer.
>
> 2. You are to be given oral and written notice of all of the following:
>
> . . . .

---

[3] WISCONSIN STAT. § 51.35(1)(e)6 states that this section does not apply to persons who have been returned to a more restrictive facility within seven days of a temporary transfer to a less restrictive facility or to inmates who have been transferred under WIS. STAT. § 51.20(13)(cm). Neither of these provisions applies to the matter at hand.

752

d) You have the right to a hearing on the transfer within ten (10) days after the transfer; this transfer to inpatient status may last for more than five (5) days;

e) The issues at the hearing will be whether you did, in fact, violate a condition of a prior transfer to a less restrictive setting and whether the form of treatment resulting from the transfer is the least restrictive of your personal liberty consistent with your treatment needs;

f) You may appear at the hearing, either without an attorney or with an attorney. You may call witnesses, cross examine witnesses, and present evidence relating to the transfer or alleged violation of conditions of transfer;

g) You may waive the hearing, but only after consultation with an attorney, and any waiver made shall be in writing, and it must be signed by both you and your attorney.

This notice, which was filed on May 28, 2002, mirrors the transfer provisions of § 51.35(1)(e)2.

¶ 19. Moreover, one of the reasons that was stated for the transfer included a "[f]ailure to take court-ordered medications as prescribed." This indicates that her transfer was "due to an alleged violation of a condition of a transfer to less restrictive treatment." WIS. STAT. § 51.35(1)(e)2.

██

¶ 20. Thus, we conclude that Elizabeth was transferred pursuant to WIS. STAT. § 51.35(1)(e)2. Because a hearing on her § 51.35(1)(e)2 transfer did not occur within the ten-day period as prescribed by § 51.35(1)(e)3, the only question that remains is whether the provision in § 51.35(1)(e)3 for a hearing is mandatory or directory. In determining whether a

statutory provision is mandatory or directory, the primary concern is to determine the intent of the legislature. *Worachek v. Stephenson Town Sch. Dist.*, 270 Wis. 116, 120, 70 N.W.2d 657 (1955).

██

¶ 21. WISCONSIN STAT. § 51.35(1)(e)3 states that "a hearing shall be held on whether the form of treatment resulting from the transfer is least restrictive of the patient's personal liberty, consistent with the treatment needs of the patient, and on whether the patient violated a condition of a transfer to less restrictive treatment" within ten days of transfer. The use of the word "shall" suggests that the provision must be interpreted as mandatory. In fact, the normal interpretation of this statutory language is that "the word 'shall' is presumed mandatory when it appears in a statute." *State v. Sprosty*, 227 Wis. 2d 316, 324, 595 N.W.2d 692 (1999).

██

¶ 22. However, on occasion, we have held statutory time limits to be directory despite the use of the word "shall." *Eby v. Kozarek*, 153 Wis. 2d 75, 79–80, 450 N.W.2d 249 (1990). Thus, whether the word "shall" denotes a mandatory or directory action is not "governed by a per se rule." *State ex rel. Marberry v. Macht*, 2003 WI 79, ¶ 15, 262 Wis. 2d 720, 665 N.W.2d 155. Instead, in order to determine whether a statutory time limit is mandatory or directory, we must consider several factors, including "the existence of penalties for failure to comply with the limitation, the statute's nature, the legislative objective for the statute, and the potential consequences to the parties, such as injuries or wrongs." *Id.*, ¶ 17 (citation omitted).

¶ 23. In *Karow v. Milwaukee County Civil Service Commission*, 82 Wis. 2d 565, 572, 263 N.W.2d 214

(1978), the Wisconsin Supreme Court acknowledged that provisions may be mandatory or directory:

> [A] time limit may be construed as directory when allowing something to be done after the time prescribed would not result in an injury. But where the failure to act within the statutory time limit does work an injury or wrong, this court has construed the time limit as mandatory.

Injury occurs where an interest is violated. For example, an individual, "who is incarcerated and deprived of [his or] her liberty until the holding of a final commitment hearing, is injured to an even greater degree." *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 330, 320 N.W.2d 27 (Ct. App. 1982). In fact, we have held that the liberty interest of a patient in a civil commitment hearing is a substantial one. *Shirley J.C. v. Walworth County*, 172 Wis. 2d 371, 375, 493 N.W.2d 382 (Ct. App. 1992). The Wisconsin Supreme Court has also looked at this issue:

> A court must balance the desires of mental health professionals, friends, and family members who believe that care and treatment are in the best interests of a person who is mentally ill, and the constitutional liberty interests of individuals to be free from unwanted and unnecessary restraints. In recent decades, this balance has been struck by requiring proof of mental illness and imminent dangerousness to self or others before permitting involuntary civil commitment.

*State v. Dennis H.*, 2002 WI 104, ¶ 48, 255 Wis. 2d 359, 647 N.W.2d 851 (Abrahamson, C.J., concurring) (footnote omitted).

¶ 24. Even if this were not enough to interpret the statute as mandatory, the Wisconsin Supreme Court

has indicated that a presumption remains that "shall" indicates a mandatory action. *Sprosty*, 227 Wis. 2d at 324. "Further support is given to a mandatory interpretation of 'shall' when the legislature uses the words 'shall' and 'may' in a particular statutory section, indicating the legislature was aware of the distinct meanings of the words." *Id.* (citation omitted). Applying the logic of *Sprosty* to the matter at hand, we find that the subdivision in question also states:

> The hearing *shall* be held before a hearing officer designated by the director of the facility to which the patient has been transferred. The hearing officer may not be a person who has had direct responsibility for making treatment decisions for or providing treatment to the subject individual. The patient *may* appear at the hearing, either personally or by counsel, and *may* present and cross-examine witnesses and present documentary evidence. The hearing *may* be waived by the patient only after consultation with counsel. Any waiver *shall* be in writing and witnessed by the patient's counsel.

WIS. STAT. § 51.35(1)(e)3 (emphasis added). The fact that the statute differentiates between "may" and "shall" indicates that the patient may choose to behave as he or she sees fit, but the State must comply with the duties imposed upon it by the statute. Thus, the interpretation of the word "shall" in § 51.35(1)(e) as mandatory is supported by the logic of *Sprosty*.

¶ 25. This conclusion, that the hearing is mandatory, is further supported by the language of WIS. STAT. § 51.35(1)(e)3: "The hearing may be waived by the patient only after consultation with counsel. Any waiver made shall be in writing and witnessed by the patient's counsel." When a hearing must be waived and

can only be waived in writing after consultation with legal counsel, such a provision can only be construed as mandatory.

¶ 26. We therefore reverse the order of the circuit court insofar as it found: (1) that the transfer to inpatient status was made pursuant to WIS. STAT. § 51.35(1)(e)1, not § 51.35(1)(e)3; and (2) that a transfer under § 51.35(1)(e)1 does not require a hearing within ten days of the transfer. Transfers pursuant to § 51.35(1)(e) require a hearing within ten days.

■■■

¶ 27. Elizabeth also requests release from the underlying commitment order. All of her arguments of error, however, center around the order transferring her to inpatient status. She makes no arguments challenging the commitment order. We decline to address arguments insufficiently developed. *Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995). *Accord State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

## CONCLUSION

¶ 28. WISCONSIN STAT. § 51.35(1)(e) mandates that a patient transferred to a more restrictive environment receive a hearing within ten days of said transfer. Elizabeth was not provided with a hearing within ten days in violation of § 51.35(1)(e)3. The circuit court was without jurisdiction to effectuate a transfer to inpatient status. We therefore reverse the orders of the circuit court. Elizabeth shall be returned to outpatient status.[4]

---

[4] We understand that the commitment order terminated on November 3, 2002, and that this issue may be moot. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Olson v. Litscher*, 2000 WI

*By the Court.*—Orders reversed.

App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425. However, an appellate court may consider a moot issue if one of the following conditions is met: (1) it has great public importance; (2) a statute's constitutionality is involved; (3) a decision is needed to guide the trial courts; or (4) where the situation is likely to be repeated but seems to evade review because it is resolved before the completion of the appellate process. *Id.* This court has also determined that an issue is of great public importance when it affects the liberty interests of all persons subject to an involuntary commitment in Wisconsin. *Shirley J.C. v. Walworth County,* 172 Wis. 2d 371, 375, 493 N.W.2d 382 (Ct. App. 1992) (examining an involuntary commitment pursuant to WIS. STAT. § 51.20).

Here, Elizabeth has appealed from the denial of her motion to release her from inpatient treatment under the commitment order and return her to outpatient status. Therefore, we are satisfied that such relief asked for by Elizabeth in her appeal should be addressed. This opinion addresses that seminal issue; however, the current commitment status, if any, may control Elizabeth's current situation, so long as that commitment status was not reached in a manner inconsistent with this opinion. Thus, Elizabeth's present situation might not be altered by this opinion if a circuit court has already reviewed and extended Elizabeth's commitment pursuant to the procedures established in the Wisconsin Statutes.