723 N.W.2d 141 (2006)
2006 WI App 186
STATE of Wisconsin ex rel. MILWAUKEE COUNTY PERSONNEL REVIEW BOARD, Petitioner-Respondent,
Todd Dickau and Milwaukee County Deputy Sheriffs' Association, Intervenors-Petitioners-Respondents,
v.
David A. CLARKE, Jr., in his Capacity as Sheriff of Milwaukee County, Respondent-Appellant.
No. 2005AP1388.
Court of Appeals of Wisconsin.
Submitted on Briefs June 6, 2006.
Opinion Filed August 15, 2006.
*144 On behalf of the respondent-appellant, the cause was submitted on the briefs of William J. Domina, corporation counsel by John Jorgensen, principal assistant corporation counsel of Milwaukee.
On behalf of the petitioner-respondent, the cause was submitted on the brief of Richard J. Krill of Gonzalez, Saggio & Harlan, L.L.P., Milwaukee.
Before FINE, CURLEY and KESSLER, JJ.
¶ 1 KESSLER, J.
David A. Clarke, Jr., Milwaukee County Sheriff, appeals from an order granting a writ of mandamus ("Writ") ordering him to reinstate Todd Dickau as a Deputy Sheriff Sergeant. The Milwaukee County Personnel Review Board ("PRB") sought the Writ to enforce its order that Clarke did not have the authority to demote Dickau while Clarke's petition to demote Dickau was pending before the PRB. Clarke argues that the Writ should not have been granted because: (1) the issue became moot once the PRB held its disciplinary hearing; (2) the PRB lacked standing to sue to enforce its own order; and (3) the prerequisites for issuing the Writ were not satisfied. We reject his arguments and affirm.

BACKGROUND
¶ 2 Dickau has worked for the Milwaukee County Sheriff's Department since 1994. As of October 2004, he held the rank of Deputy Sheriff Sergeant.
¶ 3 On October 13, 2004, Clarke filed written charges against Dickau, alleging violations of various departmental and civil service rules. Those charges were filed with the PRB, the entity responsible for determining whether Milwaukee County employees should be disciplined, demoted or discharged.
¶ 4 On that same day, Clarke also issued an order (hereafter, "Order Number 744") that was to be read at roll calls. Order Number 744 stated that Dickau was "hereby relieved of his duties as a Sergeant" and would be "reassigned pending a hearing before the [PRB], on written charges for demotion." Order Number 744 identified the rules and regulations that Clarke alleged Dickau had violated.
¶ 5 It is undisputed that Dickau was ordered to report to his next scheduled shift as a deputy, rather than as a Sergeant, was ordered not to wear his Sergeant stripes on his uniform shirt, and was ordered to turn in his Sergeant's badge. However, Dickau's salary remained the same.
¶ 6 On October 20, 2004, Dickau and the Milwaukee Deputy Sheriff's Association (MDSA) filed a motion with the PRB asking the PRB to direct Clarke to reinstate Dickau to the rank of Sergeant pending a ruling by the PRB on Clarke's charges against Dickau.
¶ 7 On October 26, 2004, the PRB held a hearing. It considered Clarke's charges against Dickau and Dickau's motion with respect to Order Number 744. The PRB continued the hearing on the merits of Clarke's charges to February 15, 2005. The PRB also asked the parties to submit evidence with respect to the issue of whether Dickau was demoted by Clarke prior to a PRB disciplinary hearing.
*145 ¶ 8 The PRB sought a formal written opinion on the pre-disciplinary-hearing demotion issue from the PRB's independent legal counsel. Counsel's opinion was: (1) "Dickau was demoted when he was relieved of his supervisory duties, informed that he was being demoted, and his rank was reduced from a Sergeant to a Deputy"; (2) Clarke exceeded his authority when he demoted Dickau prior to a just cause finding by the PRB on Clarke's charges against Dickau; and (3) the PRB has authority to instruct Clarke to reinstate Dickau under the same authority, WIS. STAT. § 63.10 (2003-04),[1] that the PRB has to determine whether there is just cause to demote Dickau.
¶ 9 On November 9, 2004, the PRB conducted another hearing on Dickau's request for relief from Order Number 744. The PRB considered the opinion of its legal counsel, as well as evidence and arguments from Dickau and Clarke. The PRB unanimously voted to reinstate Dickau to his former rank and restore his supervisory authority, along with the indicia of that authority and rank, pending the outcome of the hearing on the charges against Dickau that was scheduled for February 15, 2005.
¶ 10 The PRB's decision on Dickau's request for relief from Order Number 744 was communicated to Clarke in a short memo on November 10, 2004. Clarke did not reinstate Dickau. On December 21, 2004, the PRB members signed written findings, conclusions and an order confirming their November 9, 2004 decision. The PRB specifically found that Dickau had been "effectively demoted" prior to being given a hearing on the charges against him, and that this violated WIS. STAT. §§ 59.52(8)(b), 63.10 and 63.12. The PRB ordered that Dickau "be reinstated to a position of Deputy Sheriff Sergeant and not relieved of his duties, uniform and insignia as a [Deputy Sheriff] Sergeant until such time as an evidentiary hearing on the material facts of his case is conducted and a decision rendered by the [PRB] on the charges for his demotion." The document was transmitted to Clarke on December 22, 2004.
¶ 11 Clarke did not comply with the PRB's order. Nor did Clarke seek judicial review of the order by certiorari to the circuit court.[2]
¶ 12 The PRB filed a petition for alternative Writ of mandamus, asking the circuit court to order Clarke to comply with the PRB's order because, as of January 21, 2005, Clarke had not reinstated Dickau to the position of Deputy Sheriff Sergeant as required by the PRB's order. On January 25, 2005, Dickau and MDSA moved to intervene so they could be actively involved in seeking the Writ.
¶ 13 On January 27, 2005, Clarke moved to quash the Writ. Clarke asserted that: (1) the PRB lacked authority to seek the Writ and had no "clear legal right" at stake in the action; (2) Clarke had no "positive and plain duty" to follow the PRB's order because the PRB had exceeded its jurisdiction since Dickau had not been "demoted," and since Dickau had no enforceable right to any particular assignment or uniform; (3) the PRB would not be "substantially damaged" by Clarke's non-compliance with the order; and (4) *146 there were other remedies available because the PRB could hold a speedy hearing on the charges against Dickau.
¶ 14 A hearing on the motions took place before the trial court on January 28, 2005. Clarke argued that Dickau had not been demoted and that instead, Clarke "in the exercise of his discretion decided to assign Sergeant Dickau a different duty and with a different insignia than he previously held." Clarke argued that because Dickau had not suffered any decrease in salary he had not been demoted.
¶ 15 Clarke also argued that the PRB lacked standing to seek the Writ. However, Clarke indicated that he did not oppose Dickau's motion to intervene, noting that Dickau "is in a more appropriate place in terms of standing to seek enforcement of the PRB's order." Clarke argued that even if Dickau was allowed to intervene, the Writ should not be issued.
¶ 16 Counsel for the PRB argued that Dickau had been demoted, citing cases holding that a reduction in rank, even without a reduction in pay, is a demotion. Dickau's counsel added that Dickau, who now had to wear the uniform and badge of a Deputy,
has a reputational interest apart from that of the [PRB] and wants to retain his position of authority as a sergeant, which was a tested position and not an appointed one, and it's that interest that he is pursuing. . . . It's not whether he can get his stripes back for the next 16 days.
¶ 17 Counsel for the PRB acknowledged that the case had broader implications than resolution of Dickau's interests, stating:
Although the [disciplinary] hearing in this matter is only two weeks away, there is a broader issue here, and that's that these matters go relatively quickly, and it will always be [the] case that by the time you get around to getting the order signed, take action and try to see if it would be complied with voluntarily and bring a mandamus action . . . [that] a significant amount of time goes by.
. . . .
It is a question of the [PRB's] authority to have exclusive jurisdiction over demotions pending a hearing, and whether the [PRB's] orders should be complied with. . . . The [PRB] shouldn't have to be coming into court to have its orders enforced, and the [PRB] shouldn't have to worry about appointing authorities taking actions which are exclusively within their jurisdiction prior to a hearing.
¶ 18 The trial court granted MDSA and Dickau's motion to intervene. The trial court also found that the PRB had standing to file the Writ. The trial court acknowledged that it would like to give the parties the opportunity to file additional materials before making a decision on issuing the Writ, and that it would be difficult to issue a decision before the February 15, 2005 disciplinary hearing. The trial court recognized that a decision would still be desirable, because both parties had indicated that Dickau's case had implications for future cases. The date for issuing a decision was set for March 15. The parties all agreed that the decision would be based on the undisputed facts in the record, including the various orders issued by Clarke and the PRB.
¶ 19 On February 15 and February 18, 2005, the PRB conducted a hearing on the merits of the charges against Dickau. Apparently, the PRB found that all but one of the charges were unsubstantiated, imposed a five-day unpaid suspension as discipline, and specifically directed Clarke to reinstate *147 Dickau to his former rank of Sergeant.[3]
¶ 20 On March 15, 2005, the parties appeared before the trial court for argument and a decision. The trial court was apprised that the disciplinary hearing had occurred; it asked for argument on whether the issue was now moot. The PRB stated that the issue was moot "to some extent," but urged the trial court to decide the case because it would resolve the scope of the Sheriff's authority to reduce a party's rank prior to a disciplinary hearing before the PRB, which was an issue of great public importance that was likely to be repeated and that will evade review if a decision was not made.
¶ 21 Dickau similarly argued that the trial court should decide the issue, because Dickau and MDSA were interested in a final decision on whether the Sheriff could demote an employee prior to a PRB hearing on the alleged violations. Dickau also noted that Clarke had already refused to follow the PRB's decision that Dickau should not be demoted. Dickau indicated that he still had not been allowed to wear his Sergeant stripes, had not been given back his Sergeant badge, and had not been given any indicia of authority that goes along with the rank of Sergeant.
¶ 22 In response, Clarke argued that the matter was clearly moot, because the PRB had held its hearing on the charges, and the order challengedOrder Number 744had, by its own terms, expired as of the date the PRB made its final decision. Curiously, counsel for Clarke also stated that the final written findings of fact, conclusions of law and order had not yet been issued, and relied on the lack of a final order as the reason that Clarke had not yet allowed Dickau to resume wearing his stripes and carrying his Sheriff Deputy Sergeant badge. Counsel stated that the orders "will be complied with upon the Sheriff receiving them."
¶ 23 The trial court indicated that it was concerned about the mootness issue, but stated: "[T]his is an issue that isn't necessarily going to go away . . . they are seeking some sort of guidance from the Court. So I do feel that it is an important issue that needs to be resolved and that this Court needs to, in essence, issue a decision."
¶ 24 The trial court then proceeded to address the underlying merits of the demotion dispute. The trial court concluded that Clarke had, in fact, demoted Dickau. The trial court explained:
It's clear to me . . . in a law enforcement community organization, that rank does play a role in the perception and definition of duties. And is the sergeant to be paid as a sergeant but yet not have any of the authorities and responsibilities or indicia of appearance of a sergeant? In my mind, this is in fact a demotion.
. . . .
[I]t appears to me that when, in fact, a person is told that they cannot wear their stripes; they're told that, for all intents and purposes, they must wear that uniform that is equivalent to being a Deputy Sheriff; that for all intents and purposes, they appear to be in that class, that it is in fact a demotion.
The trial court recognized that Clarke had the authority to assign Dickau to work where Clarke wanted him to, but held that Clarke did not have the authority to "demote pending hearings before the [PRB]."
*148 ¶ 25 The trial court specifically noted that its decision to grant the Writ was based on events occurring prior to the February 15, 2005 hearing, and that enforcement of the PRB's final decision (for which formal findings of fact, conclusions of law and order had not yet been issued as of March 15, 2005), was not an issue before the trial court. The trial court's written order for mandamus stated:
The Petitions for Writ of Mandamus filed by the PRB, Dickau and the MDSA are hereby GRANTED.
. . . .
Respondent David A. Clarke, Jr., is hereby ordered to immediately reinstate Todd Dickau to the position of Deputy Sheriff Sergeant with restoration of his duties, authority, uniform and sergeant stripes consistent with the position of Deputy Sheriff Sergeant.
This appeal followed.

DISCUSSION
¶ 26 Clarke challenges the issuance of the Writ on several grounds. He argues: (1) the case should have been dismissed as moot at the March 15, 2005 trial court hearing; (2) the PRB lacked standing to seek the Writ; and (3) the prerequisites for granting mandamus relief were not satisfied. We address each in turn.
I. Mootness
¶ 27 Clarke argues that the trial court should not have issued the Writ because, at the time of the final hearing on the Writ, the PRB disciplinary hearing had already occurred. He explains: "The temporary order of Sheriff Clarke with respect to Sergeant Dickau's duties and uniform which was the reason for the PRB's interlocutory order to the Sheriff and, consequently, the reason for this action, expired. The case was therefore moot."
¶ 28 "An issue is moot when its resolution will have no practical effect on the underlying controversy." State ex rel. Olson v. Litscher, 2000 WI App 61, ¶ 3, 233 Wis.2d 685, 608 N.W.2d 425. We determine independently whether an issue is moot. See State v. Puckett, 2002 WI App 58, ¶¶ 18-19, 252 Wis.2d 404, 643 N.W.2d 515 (implicitly applying de novo review to trial court's implicit determination that issue was moot). We are satisfied that deciding whether to grant or quash the Writ did have a "practical effect on the underlying controversy," see Litscher, 233 Wis.2d 685, ¶ 3, 608 N.W.2d 425, because it clarified the limit of the Sheriff's authority to impose demotion on an employee before a final written decision is issued in a disciplinary case pending before the PRB.
¶ 29 We conclude that as of the March 15, 2005 hearing, the issue was not moot. Although the PRB had held its hearing and, apparently, informed the parties what its conclusion would be, no formal written findings, conclusions or order had been issued. Indeed, Clarke relied on the lack of written findings of fact, conclusions of law and order as justification for not immediately allowing Dickau to resume wearing his stripes and carrying a Deputy Sheriff Sergeant badge. Clearly, Clarke did not consider the order to have been in effect as of March 15, 2005.
¶ 30 We next consider whether this appeal is moot. We assume that the PRB's final findings of fact, conclusions of law and order have been issued.[4] We conclude that even if the issue is now moot, we should nevertheless consider the issue because the issues raised in this case *149 satisfy numerous exceptions to the mootness rule.
¶ 31 "Generally, moot issues will not be considered by an appellate court." Id. ¶ 3.
However, an appellate court may consider a moot issue if one of the following conditions is met: (1) it has great public importance; (2) a statute's constitutionality is involved; (3) a decision is needed to guide the trial courts; or (4) where the situation is likely to be repeated but seems to evade review because it is resolved before the completion of the appellate process.
Fond du Lac County v. Elizabeth M.P., 2003 WI App 232, ¶ 28 n. 4, 267 Wis.2d 739, 672 N.W.2d 88.
¶ 32 The situation presented here meets three of these conditions: enforcing the authority of the PRB is a matter of great public importance, a decision is needed to guide trial courts, and the situation is likely to be repeated but will evade appellate review. See Heitkemper v. Wirsing, 194 Wis.2d 182, 188 n. 2, 533 N.W.2d 770 (1995) (electing to consider issue of sheriff's authority even though the complaining deputy had subsequently been elected sheriff because "the sheriff's power to terminate and demote a deputy are important issues that are likely to recur in the future"). In disciplinary cases, the time between the issuance of charges and the disciplinary hearing before the PRB may be weeks or a few monthscertainly short of the time needed for meaningful appellate review of any orders issued by a sheriff prior to a PRB hearing. Clarke's claim that he is constitutionally permitted to avoid the limitations of statutes and ordinances controlling some aspects of his authority as a department head is the type of claim likely to recur in future disciplinary proceedings if it is not decided now. In addition, a decision addressing a sheriff's authority to refuse to abide by a PRB order with which he disagrees will provide meaningful guidance to trial courts. For these reasons, we will address the issue on its merits.
II. Standing
¶ 33 Clarke argues that the PRB "does not have the capacity or standing to sue for mandamus relief."[5] He contends that "[n]othing in the applicable statutes or ordinances supports the proposition that the PRB has the capacity to commence an action against a department head or other appointing authority." We conclude that the PRB had standing to sue for mandamus relief to enforce its orders.
¶ 34 Some background on the PRB is helpful to understand its authority. WISCONSIN STAT. § 59.52(8)(a) empowers counties to create "a civil service system of selection, tenure and status" that is applicable to most county personnel. See id. Counties can also create a civil service commission to approve uniform provisions concerning salaries, sick leave, disciplinary actions and the like. See id. It is undisputed that in Milwaukee County, the civil service commission functions pertaining to discipline and discharge of employees are performed by the PRB. See MILWAUKEE, WIS., CODE ("Code") § 33.01 (2005).[6]
*150 ¶ 35 The PRB makes the determination required by WIS. STAT. § 59.52(8)(b) before discipline is imposed.[7] Section 59.52(8)(b) provides:
A law enforcement employee of the county may not be suspended, demoted, dismissed or suspended and demoted by the civil service commission or by the board, based either on its own investigation or on charges filed by the sheriff, unless the commission or board determines whether there is just cause, as described in this paragraph, to sustain the charges. . . .
Id. Consistent with this statute, the PRB issues orders relating to the disciplinary process. The PRB issued such an order in this case, directing Clarke to restore Dickau's rank pending the disciplinary hearing.
¶ 36 Clarke challenged the PRB's right to sue for a writ of mandamus to enforce its own order. Our supreme court has explicitly recognized that disciplinary commissions have the authority to sue to enforce their own orders. In Racine Fire and Police Commission v. Stanfield, 70 Wis.2d 395, 234 N.W.2d 307 (1975), the court considered whether the Racine Fire and Police Commission could file a complaint seeking a permanent injunction to prevent four terminated probationary patrolmen from seeking arbitration of their terminations. Id. at 396-97, 234 N.W.2d 307. The court observed that pursuant to WIS. STAT. § 62.13 (1973-74), the Commission had "considerable authority" with respect to the selection, discipline and dismissal of subordinates. Stanfield, 70 Wis.2d at 402, 234 N.W.2d 307. The court held that even though the powers enumerated in § 62.13 (1973-74) did not include the power to sue, this did not foreclose the possibility because "an express statutory authorization is not always indispensable to the ability to sue or be sued." Stanfield, 70 Wis.2d at 399, 234 N.W.2d 307.
¶ 37 The court explained that an entity upon which a particular power or duty is conferred by statute can be, of necessity, empowered to litigate the scope of its authority:
[A] particular power or duty conferred by statute may, of necessity, require the additional power to maintain or defend an action arising out of that power or duty. . . . It is only where the capacity to sue or be sued is necessary to carry out an express power or to perform an express duty, or where the action arises out of the performance of statutory powers or obligations that the authority to sue or be sued exists. *151 Id. at 401-02, 234 N.W.2d 307. The court concluded that where the scope of the Commission's powers and duties were being called into question, it was "necessary to afford the fire and police commission the right to maintain the action in its own name for the benefit of the citizens of the state." Id. at 402, 234 N.W.2d 307.
¶ 38 Although Stanfield involved a city's police and fire commission, as opposed to a civil service review board, we conclude the principles are equally applicable. The PRB, which decides all matters related to discipline and discharge  one of the important duties assigned to civil service commissions under WIS. STAT. § 59.52(8)(b)issued an order that was ignored by the Sheriff. As in Stanfield, for the PRB to enforce the power it is charged to exercise, it is "necessary to afford" the PRB "the right to maintain the action in its own name for the benefit of the citizens of the state." See id., 70 Wis.2d at 402, 234 N.W.2d 307.
¶ 39 Clarke argues that Stanfield should be distinguished because the civil service commission in Stanfield had much broader powers than the authority of the PRB, which exercises only a subset of those powers exercised by civil service commissions. The argument is unpersuasive. The PRB has the authority to make all decisions related to the discipline and discharge of employees. See Code § 33.01(2). That specific authority is as essential to the functioning of a civil service system as the specific authority at issue in Stanfield. We conclude that the PRB has the same interest and need to exercise the ability to sue that the court recognized in Stanfield.
III. Issuance of the Writ of mandamus
¶ 40 We now turn to our review of the issuance of the Writ. As former Justice Sykes noted, "[m]andamus is an extraordinary writ issued in the discretion of the circuit court to compel compliance with a plain legal duty." Mount Horeb Cmty. Alert v. Village Bd. of Mt. Horeb, 2003 WI 100, ¶ 9, 263 Wis.2d 544, 665 N.W.2d 229. "A writ of mandamus may be used to compel public officers to perform duties arising out of their office and presently due to be performed." Pasko v. City of Milwaukee, 2002 WI 33, ¶ 24, 252 Wis.2d 1, 643 N.W.2d 72 (internal quotation marks and citations omitted). Mount Horeb identified four criteria that must be established before a writ of mandamus can be issued:
A writ of mandamus is equitable in nature and will issue when the plaintiff demonstrates: 1) a clear legal right to relief; 2) a positive and plain legal duty on the part of the official or body to whom the writ is directed; 3) substantial damage due to the nonperformance of the duty; and 4) no adequate remedy at law.
Id., 263 Wis.2d 544, ¶ 9, 665 N.W.2d 229.
¶ 41 The parties disagree about the appropriate standard of review to be applied in this case. Clarke recognizes that, generally, the standard for reviewing a circuit court's issuance of a writ of mandamus is to inquire whether the trial court erroneously exercised its discretion. See State ex rel. Blum v. Board of Educ., 209 Wis.2d 377, 381, 565 N.W.2d 140 (Ct.App.1997). Clarke contends, however, that
both the PRB's claim for mandamus relief and the trial court's decision to grant mandamus relief depend upon the legal soundness of the contention that Sheriff Clarke's interim orders affecting Sergeant Dickau's assignment and uniform constituted a "demotion" within the meaning of Wis. Stats. §§ 63.10 and 59.52(8). That is an issue of law which the court of appeals should review de novo.
*152 In contrast, Dickau argues that this mandamus action involves issues of fact and mixed questions of fact and law, and that a deferential standard of review should be applied. In this case, regardless of whether we apply a deferential or a de novo standard of review, the result is the same: we conclude that the Writ was properly issued.
¶ 42 As noted, there are four criteria that must be established to issue a writ of mandamus. Clarke argues that none of the four was met. He is incorrect. We examine each in turn.
A. A clear legal right to relief
¶ 43 Clarke offers several arguments in support of his contention that the PRB had not established "a clear legal right to relief." See Mount Horeb, 263 Wis.2d 544, ¶ 9, 665 N.W.2d 229. The first is that the PRB had no right to enforce its own orders by mandamus. This is, in effect, a reiteration of the standing argument, which we have already rejected.
¶ 44 Second, Clarke contends that there is nothing in the statutes and ordinances which define the scope [of] the PRB's authority which suggests that it is empowered to provide interlocutory relief, attempting to govern the conduct of department heads prior to PRB hearings on disciplinary charges as it has attempted to grant in this case.
There is no development of the argument or citation to authority in support of the suggestion that the PRB lacked authority to issue the order in question. Therefore, we decline to address this argument. See State v. Pettit, 171 Wis.2d 627, 646, 492 N.W.2d 633 (Ct.App.1992) (we decline to review issues that are inadequately developed).
¶ 45 Next, Clarke argues that the PRB and Dickau had "no clear right to relief" because the PRB's conclusion that Dickau had been demoted was wrong. Clarke is attempting to reargue the merits of the issue that was briefed and argued to the PRB in October and November 2004. However, the merits of the PRB's decision, which Clarke neither appealed nor followed, are not at issue in a mandamus action. The PRB had the apparent authority to issue the order. To allow the merits of the PRB's decision to be reviewed in a mandamus action would be to allow the circuit court to conduct a de novo review of the PRB's findings and conclusions. Such a process would also permit disgruntled department heads to force the PRB or the employee to routinely sue to enforce issued orders. That is not the procedure to be followed when one is aggrieved by a PRB decision. If Clarke disagreed with the merits of the PRB's order, his recourse was to seek review of that order via a writ of certiorari. See State ex rel. Iushewitz v. Milwaukee County Pers. Review Bd., 176 Wis.2d 706, 710, 500 N.W.2d 634 (1993) (Where there are no statutory provisions for judicial review, action of a board or commission may be reviewed by certiorari.). Clarke chose not to seek judicial review.
¶ 46 It is undisputed that the PRB issued an order directing Clarke to reinstate Dickau to the rank of Deputy Sheriff Sergeant. Clarke ignored the order. Both the PRB, as the board that issued the order, and Dickau, the subject of the order, had a clear right to relief.
B. A positive and plain legal duty by the Sheriff
¶ 47 The second consideration is whether Clarke, "the official to whom the writ is directed," had a "positive and plain legal duty" to follow the PRB's order. See Mount Horeb, 263 Wis.2d 544, ¶ 9, 665 N.W.2d 229. The law is, and has *153 been for at least eighty-five years, that a sheriff does not have the power to ignore an order by a civil service commission. In State ex rel. Milwaukee County v. Buech, Sheriff of Milwaukee County, 171 Wis. 474, 177 N.W. 781 (1920), our supreme court dealt with a sheriff who was twice ordered by the civil service commission to reinstate a specific deputy against whom the sheriff had twice filed charges seeking removal. Id. at 476, 177 N.W. 781. The commission twice found the charges to be unfounded. Id. Milwaukee County and the deputy brought a mandamus proceeding to enforce the commission's order. Id. The sheriff moved to quash the alternative writ, claiming that Milwaukee County did not have standing to seek mandamus based on technical rules of joinder of parties in effect at that time, and that the civil service act was an unconstitutional interference with the sheriff's common law power to appoint deputies. Id. at 477, 481, 177 N.W. 781. The court disagreed. It explained the scope of the sheriff's constitutional powers:
While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the Constitution prohibits any legislative change in the powers, duties, functions and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment would be necessary in order to change the duties of sheriffs in the slightest degree. . . .
Id. at 482, 177 N.W. 781.
¶ 48 The similarities between the cases presented by Sheriff Buech in 1920 and Sheriff Clarke eighty-six years later are striking. Both unilaterally decided to ignore the orders of an entity specifically authorized to determine the very controversy in which the sheriff was involved because each sheriff believed he understood the statutes and ordinances better than the entity responsible for applying them. Neither sought judicial review of the commission's or board's orders. Both objected when the entity (in 1920, the civil service commission; here, the PRB) asked a court to enforce the order through mandamus. Then, as now, the court enforced the order. No one, including a department head, may choose to ignore a direct order of an entity with apparent authority to make the order even if he or she believes the order is wrong. Judicial review is the avenue for resolution of disputes regarding the lawful reach of an entity's authority.
¶ 49 We conclude, like the trial court, that Clarke had "a positive and plain legal duty" to follow the PRB's order. See Mount Horeb, 263 Wis.2d 544, ¶ 9, 665 N.W.2d 229. Having chosen not to seek review of that order, he was not free to simply ignore an apparently lawful order of the PRB and may be compelled by mandamus to comply with the order. See Heitkemper, 194 Wis.2d at 187-88, 533 N.W.2d 770; Buech, 171 Wis. at 481-82, 177 N.W. 781.
C. Substantial damage due to non-performance of the duty
¶ 50 The third consideration is whether the plaintiff will suffer "substantial damage due to nonperformance of the duty." See Mount Horeb, 263 Wis.2d 544, ¶ 9, 665 N.W.2d 229. We agree with the trial court that the PRB and Dickau (and by extension MDSA, which seeks to protect the rights of its members) would have *154 suffered substantial damage if Clarke was allowed to continue to ignore the PRB's order.
¶ 51 It is undisputed that Dickau was personally affected by Clarke's Order Number 744. He sought relief pending his final disciplinary hearing, and the PRB granted that relief. The PRB found that Dickau had been damaged in numerous ways, such as by being ordered to act and appear as though he had already been demoted by not displaying the insignia or badge of a sergeant, and by not exercising any supervisory authority that a sergeant holds. So long as Clarke was allowed to ignore the order, Dickau would be deprived of rights to which the PRB determined he was entitled.
¶ 52 The PRB is substantially damaged if a department head is free to ignore any order with which he or she does not agree. A carefully developed public employment system such as that before us cannot function fairly and properly as the legislature has directed if a department head is free to simply ignore the orders of the responsible board.
D. No adequate remedy at law
¶ 53 The final consideration is whether there is another adequate remedy at law. See Mount Horeb, 263 Wis.2d 544, ¶ 9, 665 N.W.2d 229. Clarke argues that "[t]he most obvious and expeditious way available to Sergeant Dickau to remedy the effects of Sheriff's Order 744 was to pursue his statutory right to a speedy hearing before the PRB on Sheriff Clarke's disciplinary charges against him." Clarke makes no argument with respect to whether the PRB had any other legal remedies available. We conclude that there was not another adequate remedy at law available to either the PRB or Dickau.
¶ 54 The PRB had no other adequate remedy at law available. The PRB conducted a hearing in which both Clarke and Dickau participated. The PRB sought advice from its legal counsel. Thereafter it issued its order. Clarke ignored that order. Mandamus was the only mechanism available to enforce its order. Without this mechanism, the PRB had no ability to preserve the authority it has been given, or the integrity of the disciplinary system that it oversees. Without mandamus as a tool, department heads could treat the PRB as a paper tiger and ignore its orders with impunity.
¶ 55 Dickau sought out the only remedy available when he believed Clarke's actions toward him were in violation of relevant statutes and ordinances: he sought an order from the PRB. Clarke suggests no alternative remedy at law by which Dickau could enforce his rights while the PRB was considering Clarke's charges against him. We reject Clarke's suggestion that Dickau could have avoided the problem by refusing to waive his right to a speedy hearing because that would have left Order Number 744 in effect, albeit for less time. Further, an employee cannot fairly be required to choose between the need for sufficient time to prepare a defense to charges by a department head and the right to seek temporary relief from an unauthorized temporary order of a department head.
¶ 56 Our conclusion is consistent with existing case law. Our supreme court has previously recognized that a sheriff's duty to comply with a county personnel commission order to reinstate a deputy was properly enforced by mandamus, in the face of the sheriff's claim that his constitutional and statutory power to appoint, or refuse to appoint, justified refusal to comply. See Heitkemper, 194 Wis.2d at 187-88, 533 N.W.2d 770; see also Buech, 171 Wis. at 481-82, 177 N.W. 781 (affirming the use of a writ of mandamus to enforce orders of *155 the civil service commission where the sheriff ignored the orders, asserting his superior constitutional authority to make personnel decisions).

CONCLUSION
¶ 57 No individual, including an elected law enforcement officer, may ignore an order issued by an entity with the apparent authority to make such orders, simply because he or she disagrees with the order. Under the facts of this case, the circuit court properly issued the Writ to enforce the PRB's order. The PRB had standing to seek the Writ (as did Dickau and MDSA), and the issue was not moot. For these reasons, we affirm.
Order affirmed.
¶ 58 FINE, J. (dissenting).
On October 13, 2004, Milwaukee County Sheriff David A. Clarke, Jr., issued an order that "hereby relieved" Todd Dickau "of his duties as a Sergeant" in the Milwaukee County Sheriff's Department. The order also noted that Dickau would be "reassigned pending" procedures to determine whether Dickau should be demoted.
¶ 59 Clarke's temporary relieving of Dickau of his sergeant's duties is specifically permitted by WIS. STAT. § 63.10(1), which the parties and the Majority agree applies here. Section 63.10(1) says that when a department head "believes that an officer or employee in . . . that person's . . . department has acted in such a manner as to show the officer or employee to be incompetent to perform the officer's or employee's duties or to have merited demotion or dismissal," the department head shall make the proper referral "in writing to the civil service commission setting forth specifically the complaint against the officer or employee, and may suspend the officer or employee at the time such complaint is filed." (Emphasis added.) The statute also says: "Nothing in this subsection shall limit the power of the department head to suspend a subordinate for a reasonable period not exceeding 10 days," although the ten-day limitation applies only to "a limited form of intra-departmental discipline without prior resort by the department to the commission." State ex rel. Messner v. Milwaukee County Civil Serv. Comm'n, 56 Wis.2d 438, 447, 202 N.W.2d 13, 19 (1972).
¶ 60 How does the Majority deal with WIS. STAT. § 63.10(1)'s giving authority to department heads to suspend employees referred for possible demotion? Its sole reference is the following sentence, without analysis, in footnote 7: "No such suspension was ordered here." Majority, ¶ 35, n. 7. I respectfully disagree; Clarke suspended Dickau from his duties as sergeant. This the statute permitted him to do.[1]
¶ 61 Although the power to suspend pending final determination of whether an employee should be demoted or dismissed might not be necessary in cases similar to Messner, which concerned the falsification of time-cards by a welfare caseworker, and which upheld the power to suspend, id., 56 Wis.2d at 440, 447-448, 202 N.W.2d at 16, 19-20, it is critical where, as here, the department head runs a quasi-military organization, whose members not only have arrest powers but also carry guns and *156 other implements of enforcement that, if misused, cannot only inflict unnecessary serious harm and cause death, but could also subject the employing county and its taxpayers to significant liability.
¶ 62 I would reverse, and, accordingly, respectfully dissent.[2]
NOTES
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Clarke made no efforts to seek judicial review of the PRB's order. Certiorari has long been recognized as the appropriate vehicle for review of decisions by administrative entities that are not covered by WIS. STAT. ch. 227. See State ex rel. Iushewitz v. Milwaukee County Pers. Review Bd., 176 Wis.2d 706, 710, 500 N.W.2d 634 (1993).
[3] Neither the PRB's final findings of fact, conclusions of law and order, nor the date they were issued, are in the record.
[4] As noted, the final order has not been provided to this court. Clarke has not asserted that he appealed the final order and that this appeal is therefore moot.
[5] Dickau and the MDSA were permitted to intervene in the action and add their own petition for a writ of mandamus. Their standing has not been challenged. Hence, even if we were to agree with Clarke that the PRB had no standing, the order from the mandamus action would still properly be before us.
[6] MILWAUKEE, WIS., CODE § 33.01 (2005) provides:

(1) Legislative intent. For the purpose of separating the personnel administrative functions of the existing civil service commission from the quasijudicial functions vested in such commission, and to assure that the discipline or discharge of county employes is not influenced by political considerations, nepotism, personal friendship or animosity, race, creed, color, national origin, sex, physical handicap, age or representative status except as provided by law, it is the intent of the county, acting under the authority of chapter 118, Laws of 1973, relating to county reorganization, to establish a personnel review board, and to transfer the duties and responsibilities as prescribed in ss. 63.10 and 63.12, Wis. Stats., as far as they relate to the discipline and discharge of employes and all of the duties and responsibilities prescribed in section 17.207 of the Code.
(2) Enactment. A personnel review board is hereby established and the duties and responsibilities of the county civil service commission as set forth in ss. 63.10 and 63.12, Wis. Stats., and section 17.207 of the Code as they relate to the discipline and discharge of employes, are hereby transferred to such personnel review board.
[7] A department head such as a sheriff does have the option to suspend an officer or employee "for a reasonable period not to exceed 10 days. . . ." See WIS. STAT. § 63.10(1). No such suspension was ordered here.
[1] I do not understand the Majority's rationale in holding that Clarke did not order Dickau's "suspension," because the Majority has not explained it. But if the Majority means that Dickau's suspension from his duties as a sergeant was not a "suspension" under WIS. STAT. § 63.10(1) because he was allowed to work as a deputy, Dickau and his union may have won the battle but lost the war; in the future, department heads will fully remove from all duties those whom they believe should be demoted.
[2] I also disagree that the Personnel Review Board has standing to bring this action. Racine Fire & Police Comm'n v. Stanfield, 70 Wis.2d 395, 234 N.W.2d 307 (1975), upon which the Majority relies, decided only that the Fire and Police Commission had the power to sue, not that it had standing; although mentioned in the introduction to the decision, the word "standing" (or any discussion of "standing" principles) does not appear even once in the opinion written for the court by then Justice Bruce F. Beilfuss. Suffice it to say that an agency's hurt feelings do not give it standing to sue.