# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP665 |
| COMPLETE TITLE: | In the matter of the mental commitment of Samuel J. H.:<br><br>Manitowoc County,<br>      Petitioner-Respondent,<br>   v.<br>Samuel J. H.,<br>      Respondent-Appellant. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 11, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 26, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Manitowoc |
| JUDGE: | Jerome L. Fox |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs by *Donald T. Lang*, assistant state public defender, and oral argument by *Donald T. Lang*.

For the petitioner-respondent, there was a brief by *Ryan O'Rourke*, assistant corporation counsel, and Manitowoc County, and oral argument by *Ryan O'Rourke*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2012AP665
(L.C. No. 2003ME63)

STATE OF WISCONSIN      :      IN SUPREME COURT

In the matter of the mental commitment of
Samuel J.H.:

Manitowoc County,

      Petitioner-Respondent,

      v.

Samuel J.H.,

      Respondent-Appellant.

**FILED**

**JUL 11, 2013**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from an order of the Manitowoc County Circuit Court, Jerome L. Fox, Judge. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This appeal is before the court on certification by the court of appeals, pursuant to Wis. Stat. § 809.61 (2011-12).[1] On May 31, 2011, Samuel J.H. (Samuel) was committed to the care and custody of the Manitowoc County Human Services Department (the Department). Samuel was

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

initially placed in outpatient care. On September 22, 2011, the Department transferred Samuel to an inpatient facility because of erratic and delusional behavior.

¶2 Samuel petitioned the Manitowoc County Circuit Court for a review of his transfer, arguing that he was entitled to a hearing within ten days of his transfer to the inpatient facility under Wis. Stat. § 51.35(1)(e) and under Fond du Lac Cnty. v. Elizabeth M.P., 2003 WI App 232, 267 Wis. 2d 739, 672 N.W.2d 88. He also petitioned for a transfer back to outpatient status, arguing that was the proper remedy for failure to hold the review hearing within ten days of his transfer. The circuit court held a hearing on Samuel's petitions, and it denied Samuel's petition to transfer back to outpatient status. The circuit court concluded that a patient is entitled to a hearing within ten days of his transfer to a more restrictive placement under § 51.35(1)(e)3. only when the transfer is based on a violation of treatment conditions. The court denied Samuel's petition to transfer, finding that his transfer to the inpatient facility was not based on a violation of his treatment conditions, but rather was based on reasonable medical and clinical judgment.

¶3 Samuel appealed, and the court of appeals certified the case to this court to clarify whether Wis. Stat. § 51.35(1)(e) requires a hearing within ten days for all transfers to a more restrictive placement. The court of appeals stated that language in Elizabeth M.P.——that "[t]ransfers pursuant to § 51.35(1)(e) require a hearing within ten days"——is

2

arguably contrary to a plain interpretation of the statute, which differentiates between transfers made for reasonable medical and clinical judgment under § 51.35(1)(e)1., and transfers made for "an alleged violation of a condition of a transfer to less restrictive treatment" under § 51.35(1)(e)2.-3. Elizabeth M.P., 267 Wis. 2d 739, ¶26.  However, the court of appeals was without power to overrule, modify, or withdraw language from Elizabeth M.P.

¶4  We granted the court of appeals' certification and now affirm the order of the circuit court.

¶5  We hold that Wis. Stat. § 51.35(1)(e) does not require a hearing to be conducted within ten days of a transfer when the transfer is based on reasonable medical and clinical judgment under § 51.35(1)(e)1.  We withdraw any language from Elizabeth M.P. to the contrary.[2]  We further hold that a hearing must be

---

[2] Because two statements in the Elizabeth M.P. decision are contrary to the plain language of Wis. Stat. § 51.35(1)(e), stare decisis does not require that we adhere to that precedent. Thus, we withdraw the following language from Elizabeth M.P.: "Transfers pursuant to § 51.35(1)(e) require a hearing within ten days," 267 Wis. 2d 739, ¶26, and "Wisconsin Stat. § 51.35(1)(e) mandates that a patient transferred to a more restrictive environment receive a hearing within ten days of said transfer," id., ¶28.

3

conducted within ten days of a transfer when (1) the transfer "results in a greater restriction of personal freedom for the patient for a period of more than 5 days" or is "from outpatient to inpatient status for a period of more than 5 days" and (2) the transfer is based on "an alleged violation of a condition of a transfer to less restrictive treatment" under § 51.35(1)(e)2.-3.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶6  On May 31, 2011, Samuel was committed to the care and custody of the Department.[3]  Samuel was initially placed at an outpatient facility, Newport Group Home in Manitowoc, Wisconsin. On September 22, 2011, the Department transferred Samuel from an outpatient to an inpatient facility.  The transfer form stated the reason for the transfer:

---

Specifically, the doctrine of stare decisis applies to published court of appeals opinions and requires this court "to follow court of appeals precedent unless a compelling reason exists to overrule it."  Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405 (citing State v. Douangmala, 2002 WI 62, ¶42, 253 Wis. 2d 173, 646 N.W.2d 1).  See also Wis. Stat. § 752.41(2) (published court of appeals opinions "have statewide precedential effect").  Here, a compelling reason exists to withdraw the language in Elizabeth M.P. that directly conflicts with the plain language of the statute.  In so doing, we are not acting contrary to the principle of stare decisis because stare decisis does not require us "to adhere to interpretations of statutes that are objectively wrong."  Wenke, 274 Wis. 2d 220, ¶21 (citing Douangmala, 253 Wis. 2d 173, ¶42). The portions of Elizabeth M.P. that do not comport with the plain language of Wis. Stat. § 51.35(1)(e) are withdrawn because they are objectively wrong.

[3] The record in this appeal does not contain documents relating to Samuel's underlying mental health commitment.

4

Samuel has been presenting as increasingly delusional. Today he was 'chanting' and then punched his wall and door, putting a hole in the door. Samuel is the subject of a Mental Health Commitment and is being transferred inpatient. Samuel is presenting as delusional. His thoughts are confused and he is agitated. He repeatedly stated he put a hole in the door because 'someone was shot down and should be taken care of.' Sam states he is at [Holy Family Medical Center] because he is a 'person of interest.'

On September 22, 2011, Samuel was transferred to Nicolet Psychiatric Center, and he was subsequently transferred to Trempealeau County Health Care Center, both of which are inpatient facilities.

¶7 On September 22, 2011, the same day he was transferred, Samuel was provided with a form entitled "Written Notice of Wis. Stat. § 51.35(1)(e)1. Rights." The form reflected that Samuel was being transferred from outpatient to inpatient status. The form stated that the Department must inform Samuel orally and in writing of his rights under § 51.35(1)(e)1. The form listed those rights: "[t]he right to contact an attorney and a member of Subject's immediate family," "[t]he right to have counsel provided at public expense . . . if Subject is a child or is indigent," and "the right to petition a court in the county in which the patient is located or the committing court for a review of the transfer." A Department employee signed the form and thus certified that she read Samuel his rights and provided him a written copy of the form at the time of transfer. The form contained contact information for the Manitowoc County Public Defender's office.

¶8  On November 7, 2011, Samuel wrote Judge Jerome L. Fox of the Manitowoc County Circuit Court a letter that stated "I am disturbed that my outpatient status was changed to inpatient without due procedure."  On November 14, 2011, the judge sent a copy of Samuel's letter to the Manitowoc County Corporation Counsel office.  The judge's cover letter to the County stated that "I assume this triggers a hearing under § 51.35(1)(e)."

¶9  On November 15, 2011, Assistant Corporation Counsel Ryan O'Rourke responded to the judge in a letter.  Manitowoc County took the position that Samuel was entitled to a review hearing by the circuit court because Samuel's transfer was for reasonable medical and clinical judgment under Wis. Stat. § 51.35(1)(e)1., but that he was not entitled to an administrative hearing within ten days of the transfer because he was not transferred for a violation of treatment conditions under § 51.35(1)(e)2.-3.

¶10  The Department referred the matter to the Manitowoc County Public Defender's office.  On November 22, 2011, the Manitowoc County Public Defender's office appointed attorney Jewel Scharenbroch to represent Samuel.  On November 30, 2011, Samuel, by his attorney, filed a petition for review of his transfer and a petition to transfer from inpatient to outpatient treatment for failure to hold a timely review hearing.  Samuel argued that under Wis. Stat. § 51.35(1)(e) and Elizabeth M.P., a patient is entitled to a review hearing within ten days of the transfer when the transfer results in more restrictive placement and lasts for more than five days, regardless of the reason for

6

transfer. Samuel argued that according to <u>Elizabeth M.P.</u>, because he did not receive a hearing within ten days of his transfer under § 51.35(1)(e)3., he must be returned to outpatient status. 267 Wis. 2d 739, ¶28.

¶11 On December 19, 2011, the Manitowoc County Circuit Court, Judge Jerome L. Fox, held a hearing on Samuel's petitions. At the hearing, the court heard testimony from Samuel and from Lori Fure, Samuel's social worker. Fure testified that Samuel was transferred because he had become "increasingly psychotic and his behavior had become out of control." She testified that "[h]is medication had been increased and yet he continued to become more psychotic and more out of control to the point where he was totally delusional and punching holes in the wall." She further stated that the group home could no longer handle Samuel. Based on her experience as a social worker and her understanding of Samuel's case, Fure testified that inpatient care was the least restrictive level of treatment appropriate for Samuel at that time.

¶12 Fure denied that Samuel was transferred because of violations of his treatment conditions. Fure testified that Samuel was subject to treatment conditions while he was placed in outpatient care, including, <u>inter alia</u>, "[r]efrain from consuming alcoholic beverages" and "[r]efrain from any acts, attempts, or threats to harm myself or others." Fure testified that Samuel had consumed alcohol a couple of days prior to his transfer, but "that's not a reason to transfer somebody." Further, though Samuel had made vaguely threatening statements,

7

Fure testified that Samuel had not been transferred because of an act or a threat to harm himself or others.

¶13 Samuel also testified. His attorney asked him why he punched the door, and Samuel responded that "[o]ne plane of reality was shot down in my——my real world, and when the two worlds met up, I could tell that I wanted to make it concrete and meet up with my mental state of affairs."

¶14 The court found that the reason for Samuel's transfer was his delusional behavior, not for a violation of his treatment conditions. The court interpreted Wis. Stat. § 51.35(1)(e) as requiring a hearing within ten days only when a transfer is made for a violation of treatment conditions, not when a transfer is made for reasonable medical and clinical judgment. However, the circuit court concluded that language in Elizabeth M.P. could be interpreted as requiring a hearing within ten days regardless of whether the subject is being transferred for reasonable medical and judgment or for a violation of treatment conditions. 267 Wis. 2d 739, ¶26 ("Transfers pursuant to § 51.35(1)(e) require a hearing within ten days."). The circuit court noted, however, that other language in Elizabeth M.P. in fact differentiated the two types of transfers. The circuit court suggested that Elizabeth M.P.'s statement——requiring a hearing within ten days for all transfers under § 51.35(1)(e)——related to its discussion of whether hearings under § 51.35(1)(e)3. were mandatory or permissive. See id., ¶¶20-25. In other words, the statement in Elizabeth

8

M.P. could be read as "a hearing under (1)(e)3. is mandatory, not permissive."

¶15 The circuit court concluded that it was not necessary to hold a hearing within ten days for Samuel, since his transfer was based on reasonable medical and clinical judgment rather than a violation of a treatment condition. As Samuel was not entitled to a hearing within ten days, the circuit court denied his petition for a transfer from inpatient to outpatient care. The circuit court concluded that inpatient care was the least restrictive placement appropriate for Samuel.

¶16 On March 27, 2012, Samuel filed a notice of appeal from the circuit court's order. On September 5, 2012, the court of appeals certified the question of whether Elizabeth M.P.'s statement——requiring a hearing within ten days for transfers made under Wis. Stat. § 51.35(1)(e)——is contrary to the plain language of the statute. The court of appeals noted that the inconsistency in Elizabeth M.P. was apparent, but that it was powerless to address the inconsistency. See Cook v. Cook, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (holding that the court of appeals may not overrule, modify, or withdraw language from its prior published decisions).

¶17 On November 14, 2012, we accepted the court of appeals' certification.

## II. STANDARD OF REVIEW

¶18 The question presented in this case is whether Wis. Stat. § 51.35(1)(e) mandates a hearing within ten days for all transferred patients, including those transferred for reasonable

9

medical and clinical judgment under § 51.35(1)(e)1., or whether the mandate applies only to those transferred due to a violation of treatment conditions under § 51.35(1)(e)2.-5. The interpretation and application of § 51.35 present questions of law that we review de novo while benefitting from the analyses of the court of appeals and circuit court. See State v. Ziegler, 2012 WI 73, ¶37, 342 Wis. 2d 256, 816 N.W.2d 238; Heritage Farms, Inc. v. Markel Ins. Co., 2012 WI 26, ¶24, 339 Wis. 2d 125, 810 N.W.2d 465. The circuit court made factual findings about the reason for Samuel's transfer, and "[w]e uphold a circuit court's findings of fact unless they are clearly erroneous." Phelps v. Physicians Ins. Co. of Wis., Inc., 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615.

### III. ANALYSIS

¶19 We hold that Wis. Stat. § 51.35(1)(e) does not require a hearing to be conducted within ten days of a transfer when the transfer is based on reasonable medical and clinical judgment under § 51.35(1)(e)1. We withdraw any language from Elizabeth M.P. to the contrary. We further hold that a hearing must be conducted within ten days of a transfer when (1) the transfer "results in a greater restriction of personal freedom for the patient for a period of more than 5 days" or is "from outpatient to inpatient status for a period of more than 5 days" and (2) the transfer is based on "an alleged violation of a condition of a transfer to less restrictive treatment" under § 51.35(1)(e)2.-3.

10

¶20 "'[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.'" Heritage Farms, 339 Wis. 2d 125, ¶26 (quoting State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). Statutory interpretation "'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" Kalal, 271 Wis. 2d 633, ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45. Statutory language is interpreted in context, and it must be understood in relation to surrounding language and surrounding statutes. Id., ¶46. Courts interpret statutes "to avoid absurd or unreasonable results." Id. When statutory interpretation yields a plain meaning, extrinsic sources need not be consulted, "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶¶46, 51.

¶21 Wisconsin Stat. § 51.35(1), which governs the transfer of patients and residents, states in relevant part:

> (a) Subject to pars. (b), (d), and (dm), the department or the county department under s. 51.42 or 51.437 may transfer any patient or resident who is committed to it, or who is admitted to a treatment facility under its supervision or operating under an agreement with it, between treatment facilities or

11

from a treatment facility into the community if the transfer is consistent with reasonable medical and clinical judgment, consistent with s. 51.22(5), and, if the transfer results in a greater restriction of personal freedom for the patient or resident, in accordance with par. (e).

. . . .

(e)1. Whenever any transfer between different treatment facilities results in a greater restriction of personal freedom for the patient and whenever the patient is transferred from outpatient to inpatient status, the department or the county department specified under par. (a) shall inform the patient both orally and in writing of his or her right to contact an attorney and a member of his or her immediate family, the right to have counsel provided at public expense, as provided under s. 51.60, and the right to petition a court in the county in which the patient is located or the committing court for a review of the transfer.

2. In addition to the rights and requirements specified in subd. 1., within 24 hours after any transfer which results in a greater restriction of personal freedom for the patient for a period of more than 5 days or any transfer from outpatient to inpatient status for a period of more than 5 days and if the transfer is due to an alleged violation of a condition of a transfer to less restrictive treatment, the department or the county department specified under par. (a) shall ensure that the patient is provided a written statement of the reasons for the transfer and the facts supporting the transfer and oral and written notice of all of the following:

a. The requirements and rights under subds. 3. to 5.

b. The patient's right to counsel.

c. The patient's right to have counsel provided at public expense, as provided under s. 51.60.

d. The rights of the patient's counsel to investigate the facts specified in the written

12

statement of reasons for the transfer, to consult with the patient prior to the patient's waiving a hearing under subd. 3., to represent the patient at all proceedings on issues relating to the transfer, and to take any legal steps necessary to challenge the transfer.

3. <u>Within 10 days after the transfer specified in subd. 2.</u>, a hearing shall be held on whether the form of treatment resulting from the transfer is least restrictive of the patient's personal liberty, consistent with the treatment needs of the patient, and on whether the patient violated a condition of a transfer to less restrictive treatment that resulted in a transfer under subd. 2. The hearing shall be held before a hearing officer designated by the director of the facility to which the patient has been transferred. The hearing officer may not be a person who has had direct responsibility for making treatment decisions for or providing treatment to the subject individual. The patient may appear at the hearing, either personally or by counsel, and may present and cross-examine witnesses and present documentary evidence. The hearing may be waived by the patient only after consultation with counsel. Any waiver made shall be in writing and witnessed by the patient's counsel.

Wis. Stat. § 51.35(1)(a), (e) (emphasis added).

¶22 Samuel argues that all transfers under Wis. Stat. § 51.35(1)(e) require a review hearing within ten days of the transfer. He points to language in <u>Elizabeth M.P.</u> that "[t]ransfers pursuant to § 51.35(1)(e) require a hearing within ten days." 267 Wis. 2d 739, ¶26. Samuel argues that this interpretation reinforces the policy that a patient who is the subject of a mental health commitment has a right to the least restrictive placement necessary to address his or her mental health issues. <u>See, e.g.</u>, Wis. Stat. § 51.001(2) ("To protect personal liberties, no person who can be treated adequately

13

outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility."). Samuel also points out that if the two types of transfers are subject to different procedures, the reason for transfer can be manipulated to avoid a hearing within ten days. Finally, Samuel points to case law holding that statutory time limits in civil commitment proceedings are strictly enforced, and failure to comply with time limits deprives a court of jurisdiction over the person who is the subject of the proceedings.

¶23 Manitowoc County argues that the plain language of the statute requires a hearing within ten days only when the transfer is based on a violation of a treatment condition. See Wis. Stat. § 51.35(1)(e)2.-3. (stating that "if the transfer is due to an alleged violation of a condition of a transfer to less restrictive treatment" a hearing shall be held "[w]ithin 10 days after the transfer"). The County further argues that if there must be a hearing within ten days for all transfers under § 51.35(1)(e), that interpretation would effectively eliminate transfers for reasonable medical and clinical judgment. The subdivision that sets out the Department's burden of proof at the hearing within ten days requires it to prove that there was a violation of a treatment condition: "[t]he department seeking the transfer has the burden of proving . . . that the patient violated a condition of a transfer to less restrictive treatment that resulted in a transfer under subd. 2." § 51.35(1)(e)4. Additionally, the County argues that the statements at the end of Elizabeth M.P.——requiring a hearing within ten days for all

14

transfers under § 51.35(1)(e)——are contrary to the plain language of the statute and contrary to the reasoning of the opinion itself. See Elizabeth M.P., 267 Wis. 2d 739, ¶17 ("However, § 51.35(1)(e)1 and (1)(e)2 seem to indicate different forms of transfers. . . . [S]ubdivision 2 exists to further protect the rights of those whose transfer" is due to a violation of a treatment condition). Finally, the County states that though Samuel makes compelling policy arguments, those arguments should be made to the legislature because policy arguments cannot overcome the plain language of § 51.35(1)(e).

¶24 We conclude that the plain language of the statute does not make the hearing within ten days of a transfer under Wis. Stat. § 51.35(1)(e)3. applicable to transfers based on reasonable medical and clinical judgment under § 51.35(1)(e)1. Several reasons support our interpretation. First, subdivisions (1)(e)1. and (1)(e)2. provide different rights and procedures depending on the nature of the transfer. Subdivision (1)(e)1. provides rights[4] for patients transferred for "reasonable medical and clinical judgment," see § 51.35(1)(a), when the transfer "results in a greater restriction of personal freedom for the patient" or when the transfer is "from

---

[4] Under Wis. Stat. § 51.35(1)(e)1., the department must inform the patient of the right to contact an attorney and a member of his or her immediate family, the right to have an attorney provided at public expense under Wis. Stat. § 51.60, and "the right to petition a court in the county in which the patient is located or the committing court for a review of the transfer."

15

outpatient to inpatient status," collectively discussed as a more restrictive transfer. Subdivision (1)(e)2. provides rights[5] "[i]n addition to the rights and requirements specified in subd. 1." when a more restrictive transfer lasts "for a period of more than 5 days" and is "due to an alleged violation of a condition of a transfer to less restrictive treatment." Thus, the legislature differentiated between the two types of transfers by providing additional protections to a patient when a more restrictive transfer lasts for longer than five days and results from an alleged violation of a treatment condition.[6]

¶25 Second, consistent with the differentiation in rights under subdivisions (1)(e)1. and (1)(e)2., the procedures for the hearing within ten days of a transfer under subdivision (1)(e)3. are made applicable only to more restrictive transfers under

---

[5] Under Wis. Stat. § 51.35(1)(e)2., the department must provide the patient with "a written statement of the reasons for the transfer and the facts supporting the transfer." The department must also provide oral and written notice of the hearing procedures under subdivisions (1)(e)3.-5., the rights to counsel provided at public expense under Wis. Stat. § 51.60, and the rights of the patient's counsel in representing the patient throughout the review of the patient's transfer.

[6] Under both Wis. Stat. § 51.35(1)(e)1. and (1)(e)2., the patient has the "right to have counsel provided at public expense, as provided under s. 51.60." Section 51.60, governing appointment of counsel, provides that for adults "[i]n any situation under this chapter in which an adult individual has a right to be represented by counsel, the individual shall be referred as soon as practicable to the state public defender, who shall appoint counsel for the individual under s. 977.08 without a determination of indigency." Wis. Stat. § 51.60(1)(a). The individual may waive counsel if the waiver is knowing and voluntary. § 51.60(1)(b).

(1)(e)2.——those lasting longer than five days and resulting from an alleged violation of a treatment condition. Subdivision (1)(e)3. states, in relevant part: "Within 10 days after the transfer <u>specified in subd. 2.</u>, a hearing shall be held on . . . whether the patient violated a condition of a transfer to less restrictive treatment that resulted in a transfer under subd. 2." (Emphasis added.) It would be contrary to the plain language of the statute to interpret subdivision (1)(e)3. as providing a hearing within ten days for transfers made for reasonable medical and clinical judgment. The plain language applies the transfer review hearing within ten days, as set forth in subdivisions (1)(e)3.-5., only to transfers under (1)(e)2.——those resulting in a more restrictive placement that last for more than five days and that are a result of an alleged violation of a condition of treatment.

¶26 Third, we are persuaded by the County's argument that Samuel's interpretation of the statute leads to an absurd result because his interpretation could effectively eliminate the County's ability to transfer a patient for reasonable medical and clinical judgment, or could put the County in the untenable position of being required to allege and prove that the transfer was due to a violation of a treatment condition even if the transfer was only for reasonable medical and clinical judgment. A transfer based upon reasonable medical and clinical judgment can differ from a transfer based upon a violation of a treatment condition. Under the statute, when the County transfers a patient based on reasonable medical and clinical judgment, the

County need not prove that the patient violated a treatment condition, but it does need to prove that the transfer was based on reasonable medical and clinical judgment. See Wis. Stat. § 51.35(1)(a), (1)(e)1. In fact, the statute specifically allows for transfers that are "consistent with reasonable medical and clinical judgment." Id. On the other hand, § 51.35(1)(e)4., the subdivision that requires a hearing within ten days for certain transfers, requires that the "department seeking the transfer has the burden of proving . . . that the patient violated a condition of a transfer to less restrictive treatment that resulted in a transfer under subd. 2." Wis. Stat. § 51.35(1)(e)4. (emphasis added). If we interpret § 51.35(1)(e) as requiring a hearing within ten days for all transfers, not just those that are for a violation of a treatment condition, the County would be required to prove a violation of a treatment condition, even if the transfer was based on reasonable medical and clinical judgment. The County should not be asked to falsify its reasons for transfer. Thus, it is absurd to interpret the statute to provide for a hearing within ten days for all transfers under § 51.35(1)(e) and to require the County to prove a violation of a treatment condition regardless of the reason for transfer. We must interpret statutory language reasonably, "to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶46.

¶27 The legislative history of Wis. Stat. § 51.35 confirms our plain language interpretation. Id., ¶51 (stating that "legislative history is sometimes consulted to confirm or verify

18

a plain-meaning interpretation"). A prior version of the statute did not address transfers due to alleged violations of treatment conditions. See Wis. Stat. § 51.35(1)(e) (1985-86). In 1987, the legislature amended § 51.35(1)(e):

> Note: The repeal and recreation of s. 51.35(1)(e) by this bill creates procedural rights in addition to those in current law for persons who are transferred between facilities or from outpatient to inpatient status and applies these rights to patients who, due to an alleged violation of a condition of a transfer to less restrictive treatment: (1) are transferred to a more restrictive facility for longer than 5 days; or (2) or transferred from outpatient to inpatient status for more than 5 days.

See 1987 Wis. Act 366, § 14 (emphasis added). One of the newly created procedural rights in 1987 Wis. Act 366 was a right to an administrative hearing within ten days of the more restrictive transfer. Id. The legislative note to 1987 Wis. Act 366 reinforces that the hearing within ten days was meant to be applicable only to more restrictive transfers resulting from an alleged violation of a treatment condition.

¶28 Considering our interpretation of Wis. Stat. § 51.35(1)(e), we next turn to consider whether Elizabeth M.P. comports with our interpretation. In that case, Elizabeth was the subject of a mental health commitment, was initially treated at an inpatient facility, and in March 2002, was transferred to an outpatient facility. Elizabeth M.P., 267 Wis. 2d 739, ¶¶2-3. On May 28, 2002, a notice was filed to transfer Elizabeth from outpatient to inpatient care under § 51.35(1). Id., ¶3. An

19

affidavit from Fond du Lac's corporation counsel gave the reasons for Elizabeth's transfer:

> An affidavit by the corporation counsel for Fond du Lac county, attached to this notice, indicated that since Elizabeth's outpatient placement she had refused to take her court-ordered medication, had become delusional, argumentative and aggressive, and had failed to take her psychotropic medication as prescribed. The affidavit further indicated that Elizabeth's mental condition had substantially deteriorated, that she was unable to meet the demands of everyday life, and that she had violated conditions of her commitment 'in that she has failed to comply with recommended treatment.'

Id., ¶4. Elizabeth filed a motion for immediate release from inpatient treatment, arguing that she was entitled to and did not receive a hearing within ten days under Wis. Stat. § 51.35(1)(e)3. Id., ¶7. The circuit court concluded that Elizabeth's transfer was made pursuant to subdivision (1)(e)1., not subdivisions (1)(e)2.-3., and she was therefore not entitled to a hearing within ten days. Id. The circuit court subsequently conducted a transfer review hearing under § 51.35(1)(e)1. and approved of the transfer, "finding that the least restrictive environment consistent with Elizabeth's needs was inpatient status." Id., ¶9. Elizabeth appealed the circuit court's approval of her transfer. Id.

¶29 The court of appeals reviewed "whether the circuit court had jurisdiction to transfer Elizabeth to inpatient status when judicial review of the County's decision to transfer her was not held within ten days as required by Wis. Stat.

20

§ 51.35(1)(e)3." <u>Id.</u>, ¶10. The court of appeals interpreted § 51.35(1)(e):

> [Subdivisions] 51.35(1)(e)1 and (1)(e)2 seem to indicate different forms of transfers. The provisions suggest that while only one transfer provision and its various subdivisions all serve to protect the rights of patients, subdivision 2 exists to further protect the rights of those whose transfer 'results in a greater restriction of personal freedom for the patient for a period of more than 5 days or any transfer from outpatient to inpatient status for a period of more than 5 days' where the transfer 'is due to an alleged violation of a condition of a transfer to less restrictive treatment.'

<u>Id.</u>, ¶17 (quoting Wis. Stat. § 51.35(1)(e)2.) (footnote omitted). The court concluded that Elizabeth's transfer had been pursuant to subdivision (1)(e)2. because "the document affecting her transfer relates the rights that are enumerated in § 51.35(1)(e)3 to 5," including a right to a review hearing within ten days of her transfer. <u>Id.</u>, ¶18. Further, one of the reasons for her transfer was her alleged failure to take court-ordered medications as her treatment conditions required. <u>Id.</u>, ¶19.

¶30 The court then considered whether a hearing within ten days under Wis. Stat. § 51.35(1)(e)3. is mandatory or directory. <u>Id.</u>, ¶20. The court concluded that a hearing within ten days under § 51.35(1)(e)3. is mandatory. <u>Id.</u>, ¶25. In other words, there is no discretion in holding a hearing under subdivision (1)(e)3. because the statute requires that "'a hearing shall be held.'" <u>Id.</u>, ¶21.

21

¶31 However, the court of appeals, in its concluding paragraphs, broadly stated that "[t]ransfers pursuant to § 51.35(1)(e) require a hearing within ten days." Id., ¶26; see also id., ¶28. The court did not clearly differentiate between the two types of transfers when it reached its conclusions.

¶32 The statements in the concluding paragraphs of Elizabeth M.P. do not comport with the plain language of Wis. Stat. § 51.35(1)(e). Moreover, the concluding paragraphs are not consistent with the underlying analysis of the Elizabeth M.P. decision, wherein the court of appeals did distinguish between transfers under subdivisions (1)(e)1. and (1)(e)3. See id., ¶17 ("However, § 51.35(1)(e)1 and (1)(e)2 seem to indicate different forms of transfers. . . . [S]ubdivision 2 exists to further protect the rights of those whose transfer" is due to a violation of a treatment condition). As a result, we withdraw any language in Elizabeth M.P. that is contrary to our conclusion that § 51.35(1)(e) does not require a hearing to be conducted within ten days of a transfer when the transfer is based on reasonable medical and clinical judgment under § 51.35(1)(e)1.

¶33 Applying our interpretation of Wis. Stat. § 51.35(1)(e) to the facts of this case, we conclude that Samuel was not entitled to a hearing within ten days of his transfer under subdivision (1)(e)3. because his transfer was based on reasonable medical and clinical judgment, not a violation of a treatment condition. Samuel's social worker testified that he had become "increasingly psychotic and his behavior had become

22

out of control." The transfer form stated that "Samuel is presenting as delusional. His thoughts are confused and he is agitated. He repeatedly stated he put a hole in the door because 'someone was shot down and should be taken care of.'" The circuit court was not clearly erroneous in finding that Samuel had been transferred based on reasonable medical and clinical judgment. See Phelps, 319 Wis. 2d 1, ¶34, (stating that we uphold a circuit court's factual findings unless they are clearly erroneous). We therefore affirm the circuit court's denial of Samuel's petition to transfer and conclude that he was not entitled to a hearing within ten days of his transfer under § 51.35(1)(e)3. because his transfer was based on reasonable medical and clinical judgment.[7]

---

[7] A patient who is transferred under subdivision (1)(e)1.——a transfer for reasonable medical and clinical judgment that results in a more restrictive placement——is entitled to the rights as set forth in that subdivision, including "the right to petition a court in the county in which the patient is located or the committing court for a review of the transfer." Samuel received a review of his transfer in front of the Manitowoc County Circuit Court, which upheld the transfer because it concluded that inpatient placement was the least restrictive treatment appropriate for Samuel's needs. Samuel does not challenge that portion of the circuit court's order.

## IV. CONCLUSION

¶34    We hold that Wis. Stat. § 51.35(1)(e) does not require a hearing to be conducted within ten days of a transfer when the transfer is based on reasonable medical and clinical judgment under § 51.35(1)(e)1.    We withdraw any language from Elizabeth M.P. to the contrary.    We further hold that a hearing must be conducted within ten days of a transfer when (1) the transfer "results in a greater restriction of personal freedom for the patient for a period of more than 5 days" or is "from outpatient to inpatient status for a period of more than 5 days" and (2) the transfer is based on "an alleged violation of a condition of a transfer to less restrictive treatment" under § 51.35(1)(e)2.-3.

*By the Court.*—The order of the circuit court is affirmed.

---

Though it may be better practice to hold a hearing within ten days for all patients transferred under Wis. Stat. § 51.35(1)(e), the statute does not mandate that procedure for transfers based on reasonable medical and clinical judgment under § 51.35(1)(e)1.  At oral argument, Manitowoc County stated that after Samuel's case, it had in fact been conducting a hearing within ten days for all patients transferred under § 51.35(1)(e), which had not resulted in a great burden on the County.  As the plain language of § 51.35(1)(e) does not require a hearing within ten days for patients transferred for reasonable medical and clinical judgment under subdivision (1)(e)1., arguments to change the procedure should properly be made to the legislature.

¶35 SHIRLEY S. ABRAHAMSON, C.J. *(concurring)*.[1] I agree with the majority opinion and Manitowoc County that the plain language of Wis. Stat. § 51.35(1)(e)1. and § 51.35(1)(e)2. provides different procedures, depending on the grounds stated for the patient's transfer. But interpreting these provisions literally, as the majority opinion does, without examining them in the context of Chapter 51 and without considering the policies and procedures the legislature has explicitly established in Chapter 51 violates the majority opinion's stated rules of statutory interpretation requiring it to interpret a statute reasonably to avoid absurd or unreasonable results.

¶36 I write not only to disagree with the majority opinion's statutory interpretation, but also as importantly, to commend Manitowoc County. When the County discovered what happened in the present case, it reviewed its practices. As a result of its self-examination, Manitowoc County is working with the entities across the State in which patients from Manitowoc County reside. The County has adopted procedures that follow the statutes, adhere to legislative policies, and protect patients' statutory liberty rights and interests, without increasing costs. Hats off to Manitowoc County!

I

¶37 In the present case, Samuel J.H. was transferred on September 22, 2011, from outpatient status in Manitowoc County

---

[1] I concur because I would not, in the present case, turn the clock back and give Samuel J.H. the ten-day hearing at this time. He was afforded judicial review on the merits of his transfer and his inpatient placement has been upheld.

to inpatient status in an inpatient facility in Green Bay, Wisconsin, about 40 miles away. Samuel J.H. stayed in Green Bay four days and on September 26, 2011, was transferred to the Trempealeau County Health Care Center in Whitehall, Wisconsin, about 215 miles from Green Bay.

¶38 On the day that Samuel J.H. was transferred from Manitowoc to Green Bay, he was provided with a piece of paper informing him that he had the following rights:

1. The right to contact a lawyer and a member of his family;

2. The right to have counsel provided at public expense "if indigent;" and

3. The right to petition a court in the county in which he is located or the committing court for review of the transfer.

¶39 This piece of paper was apparently intended to satisfy Wis. Stat. § 51.35(1)(e)1. and § 51.60(1)(a). I do not think it does. At a minimum, the form Samuel J.H. was given seems to conflict with Wis. Stat. § 51.60(1)(a) with regard to the appointment of counsel. The form seems to indicate Samuel J.H. is entitled to counsel at public expense only if he is indigent, but § 51.60(1)(a) explicitly requires no such indigency determination.[2]

---

[2] Section § 51.60(1)(a), the section specifically referenced in § 51.35, explicitly states that the state public defender shall appoint counsel for any adult who has a right to be represented by counsel without a determination of indigency.

¶40 Furthermore, Wisconsin Stat. § 51.60 requires that a patient "be _referred_ as soon as practicable to the state public defender . . . ." Wisconsin Stat. § 51.60 is entitled "Appointment of Counsel" and reads, in pertinent part:

> (1) Adults. (a) In any situation under this chapter in which an adult individual has a right to be represented by counsel, the individual _shall be referred as soon as practicable_ to the state public defender, who shall appoint counsel for the individual under s. 977.08 _without a determination of indigency_ (emphasis added).

¶41 Samuel J.H. was not referred to the State Public Defender as soon as practicable.[3] Indeed, the State Public

---

In contrast, the form given to Samuel J.H. states the right to counsel as follows: "The right to have counsel provided at public expense, as provided under s. 967.06 and ch. 977, if Subject is a child or is indigent. . . ."

A patient who receives and reads this form could easily be confused regarding the right to counsel and at whose expense counsel will be provided.

At the bottom of the form, the following Note appears:

In Manitowoc County, the Public Defender can be reached as follows:

State of Wisconsin Public Defender
933 South Eighth Street, Suite 102
Manitowoc, WI 54220
(920) 683-4690

[3] At oral argument, Assistant Corporation Counsel Ryan O'Rourke touched on the interpretation of the word "refer." He explained that in Manitowoc County, transferred patients are now "referred to the public defender's office and then [corporation counsel] leave[s] it in [the public defender's] hands as to make the decision on whether someone needs to be appointed. At least [we] notify [the public defender] and make them aware of it, and then that agency is responsible for making their own decision as to whether they're statutorily obligated to appoint counsel."

3

Defender was not informed of Samuel J.H.'s transfer until Samuel J.H. himself wrote a letter to Manitowoc County Circuit Court Judge Jerome Fox in November 2011. Judge Fox then informed the Manitowoc County Corporation Counsel of Samuel J.H.'s letter, and corporation counsel then referred the matter to the State Public Defender. Majority op., ¶¶8-10.

¶42 Thus, nearly two months passed between Samuel J.H.'s transfer to inpatient status and his referral to a public defender. But for Samuel J.H.'s own action in sending a letter to the Manitowoc County Circuit Court, he may never have had counsel appointed and may never have had a hearing. The initial failure of the County to refer Samuel J.H.'s transfer to the State Public Defender and the County's placing the onus on Samuel J.H. to obtain counsel (and advise his family) do not comport with Wis. Stat. § 51.35(1)(e)1. or § 51.60. The purpose of the statutes and the legislative policy have been skirted in the present case by the majority opinion and the rights of the mentally ill have been diluted.

¶43 The legislature has declared that any person in need of care must have "access to the least restrictive treatment" appropriate for his or her needs and that in order "to protect personal liberties, no person who can be treated adequately

---

Oral Argument at 51:17-52:35, <u>Manitowoc County v. Samuel J.H.</u>, 2012AP665, <u>available</u> <u>at</u> http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).

4

outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility."[4]

¶44 The majority opinion does not facilitate least restrictive treatment and does not comport with the legislature's balancing the personal liberty interests of the individual and the protection of the individual and the public.[5]

---

[4] Wisconsin Stat. § 51.001, "Legislative Policy," reads as follows:

> (1) It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care, within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.
>
> (2) To protect personal liberties, no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility (emphasis added).

[5] The court has recognized that "[c]urrent mental health statutes reflect a balance between treating mental illness and protecting the individual and society from danger on the one hand, and personal liberty of the individual on the other. . . . Hence, from the first section of [Chapter 51], we see the tension between the role of the government to provide caring treatment (sometimes involuntarily and, if necessary, by force) and the personal liberty of the individual." Outagamie County v. Melanie L., 2013 WI 67, ¶¶43, 58, ___ Wis. 2d ___, ___ N.W.2d ___.

5

¶45 Samuel J.H. has committed no crime. The State is providing him treatment because he has a mental illness. If the State is to restrain those with a mental illness, it must guard their liberty interests scrupulously. The legislature has explicitly adopted this policy and accorded the individual the services of the State Public Defender.

¶46 The majority opinion has wandered off the clearly marked legislative course mandating the protection of the basic liberty interests of the mentally ill.

¶47 The majority opinion does not guard the liberty interests of the mentally ill scrupulously.

¶48 The majority opinion fails to harmonize § 51.35(1)(e)1. and § 51.35(1)(e)2. and interpret the provisions in the context of the expressed legislative policy and the procedural safeguards. The majority opinion severely undermines a patient's statutory procedural rights, including the patient's statutory right to government-paid counsel. In failing to interpret and apply the statutes in a manner that makes sense and respects the legislative purpose and policy, the majority opinion allows manipulation of the rights of the mentally ill.[6]

---

[6] The transferring entity determines what kind of hearing the patient gets by the way it fills out the transfer form. Samuel J.H. questions whether the entity should be able to decide not only on the transfer but also on the hearing rights of the patient.

Statutes must not be interpreted and applied in such a manner as to permit manipulation of the procedural rights of the mentally ill or to render statutory provisions meaningless or superfluous.

¶49 The result the majority opinion reaches is unreasonable in light of the text of the statute, the rights statutorily granted Samuel J.H., and the explicit legislative policy.

II

¶50 To ensure the rights of patients and compliance with the statutes, counties should follow Manitowoc's lead.

¶51 Manitowoc County Corporation Counsel explained at oral argument that subsequent to Samuel J.H.'s case, the County realized that Wis. Stat. § 51.35 was not well implemented. The County then worked with the various entities in which Chapter 51 patients reside and created and is following a standard written policy. The County now gives notice to the State Public

---

Many patients, including Samuel J.H., probably could be classified under either Wis. Stat. § 51.35(1)(e)1. or § 51.35(1)(e)2. or both statutory provisions. Samuel J.H.'s social worker testified that he had violated two conditions of his outpatient treatment, but she asserted that he was not transferred because of these violations of his treatment conditions. Majority op., ¶12. Thus, the transferring entity often, if not always, has an opportunity to decide between whether the patient is transferred for "medical and clinical" reasons or a "violation of conditions."

The majority opinion provides a blueprint for how authorities can fill out transfer papers to ensure that a patient does not receive a ten-day hearing. Unfortunately, the majority opinion may render the ten-day hearing and the procedural protections in § 51.35(1)(e)2.-5. relics of the past.

7

Defender immediately when a patient is being transferred. A ten-day hearing is ordinarily held. Assistant Corporation Counsel Ryan O'Rourke noted that providing a ten-day hearing in every transfer is not a significant burden.[7] Corporation counsel stated that the new effort does not require substantially more time or effort,[8] and in the end, ensures that the process is

---

[7] Oral Argument at 40:30–40:45, Manitowoc County v. Samuel J.H., 2012AP665, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).

[8] At oral argument, Assistant Corporation Counsel O'Rourke explained that some facilities in which Chapter 51 patients reside did not know how to appoint a hearing officer, indicating that the facilities may not be familiar with the statutory requirements of hearings. This revelation is cause for concern, yet the majority opinion remains oblivious to the practice. The Manitowoc County Corporation Counsel is assisting the facilities with which it works.

Assistant Corporation Counsel O'Rourke advised the court as follows:

> [T]he biggest problem with Samuel J.H.'s case that I have with how it happened was that counsel wasn't appointed right away. And the statute doesn't require us to, the statute simply requires that we notify him of his right to counsel and provide him the contact information, but we as a county have taken it upon ourselves to, regardless of the reason for transfer, our office is notified immediately, which wasn't always happening. Probate is notified immediately, which wasn't always happening, whether we think a hearing's necessary or not, and the public defender is notified through probate and an attorney is appointed immediately, so that we're not having this delay that we had in Samuel's case where it was a month and a half before he requested the hearing. Under the statute do I think we have to do that? No, but I believe it's better procedure.

8

fair. As Corporation Counsel explained, "[I]t's the more legally conservative approach to take to protect the transfer."[9]

¶52 Because the majority opinion's interpretation of Wis. Stat. §§ 51.35 and 51.60 has wandered off the clearly marked legislative course of protecting the basic liberty interests of the mentally ill and leads to an absurd and unreasonable result, I cannot join the majority opinion. A reasonable and harmonious reading of §§ 51.35 and 51.60 leads to the conclusion that all patients with outpatient status transferred to inpatient status are referred to counsel and granted a hearing within ten days to determine whether the form of treatment resulting from the transfer is the least restrictive alternative and consistent with the treatment needs of the patient.

¶53 A measure of a society is how it treats its weakest members. The legislature has incorporated this ethos into the

_____

Oral Argument at 34:23-35:18, Manitowoc County v. Samuel J.H., 2012AP665, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).

[9] Assistant Corporation Counsel O'Rourke said in full:

> Subsequent to Samuel J.H., and not that this has any effect on Samuel's case, but procedurally what we've done as a county is it became clear to me we needed a standard written set of policies to follow, we implemented those, we are holding the hearing regardless of the reason for transfer now, simply because I believe it's the more legally conservative approach to take to protect the transfer.

Oral Argument at 33:48-34:15, Manitowoc County v. Samuel J.H., 2012AP665, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).

statutes, and this court should interpret the statutes to achieve the clearly stated legislative policy and purpose. The majority opinion does not.

¶54 For the reasons set forth, I write separately.