106. ANNETTE KINGSLAND ZIEGLER, J.
¶ (concurring). I agree with the lead opinion's[1] conclusion that Wis. Stat. §§ 631.81 and 632.26 do not apply to the "within the policy period" reporting requirement at issue. I am compelled to write separately to clarify that a majority of the court concluded that the statutes at issue are not ambiguous and that their plain meaning dictates the outcome in this case. The opinion of the court was to be written to clearly state these conclusions. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶¶ 45-46, 271 Wis. 2d 633, 681 N.W.2d 110. I need to write because the lead opinion writer has rejected suggested changes to the opinion which would make these conclusions clear, and as a result, I write to clarify the majority opinion of the court.
¶ 107. I write to clarify that although a court may consider whether a particular interpretation of a statute would produce an absurd or unreasonable result, a court may not balance the policy concerns associated with the "consequences of alternative interpretations." I do not join the lead opinion's discussion of these "consequences," because I would engage in a more traditional plain-meaning analysis to interpret *110 the notice-prejudice statutes, Wis. Stat. §§ 631.81 and 632.26. I write separately because the lead opinion does not use the phraseology typically associated with a plain-meaning analysis, but instead engages in this more subjective "consequences" analysis, which is seemingly inconsistent with our jurisprudence.
¶ 108. "[Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" Id., ¶ 45 (quoting Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). We interpret statutes "reasonably, to avoid absurd or unreasonable results." Id., ¶ 46. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.'" Id. (quoting Bruno v. Milwaukee Cnty., 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). " 'In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute.'" Id. (quoting State v. Pratt, 36 Wis. 2d 312, 317, 153 N.W.2d 18 (1967)).
¶ 109. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶ 47. "[T]he test for ambiguity examines the language of the statute 'to determine whether well-informed persons should have become confused, that is, whether the statutory. . . language reasonably gives rise to different meanings.' " Id. (quoting Bruno, 260 Wis. 2d 633, ¶ 21) (internal quotation marks omitted). Wisconsin courts ordinarily do not consult extrinsic sources of statutory interpretation, such as legislative history, unless the language of the statute is ambiguous. Id., ¶ 50. How *111 ever, "legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶ 51. A court may also verify a plain-meaning interpretation by consulting statutory history, that is, prior enacted and repealed versions of the statute under review. Cnty. of Dane v. LIRC, 2009 WI 9, ¶ 27, 315 Wis. 2d 293, 759 N.W.2d 571.
¶ 110. The notice-prejudice statutes at issue, Wis. Stat. §§ 631.81 and 632.26, by their plain language are not ambiguous and do not apply to the "within the policy period" reporting requirement at issue. These statutes expressly prevent an insurer from "invalidat[ing]" "a claim" under certain conditions. Wis. Stat. §§ 631.81(1), 632.26(l)(b). These statutes do not create an initial grant of coverage. Lead op., ¶¶ 82-84. There is no initial grant of coverage for a claim reported outside of the claims-made-and-reported policy period. Lead op., ¶ 28. The notice-prejudice statutes, therefore, do not apply to such a claim. Lead op., ¶ 59.[2] Applying these statutes to the reporting requirement at issue would create an initial grant of coverage, which would go far beyond the statutory language that prevents the invalidation of existing coverage under certain conditions. See Shannon v. Shannon, 150 Wis. 2d 434, 450-54, 442 N.W.2d 25 (1989) (explaining that courts may use estoppel or waiver to prevent forfeiture of existing coverage but *112 not to create an initial grant of coverage). Accordingly, these statutes are unambiguous in the present case because reasonably well-informed persons should know that these statutes do not apply to the reporting requirement at issue. See Kalal, 271 Wis. 2d 633, ¶ 47.
¶ 111. The lead opinion analyzes the statutory history of these statutes. Lead op., ¶¶ 64-73. The lead opinion's analysis should not be construed as a determination that such analysis is necessary because of any ambiguity in the statutes. To the contrary, analysis of statutory history is part of a plain-meaning analysis and can be used to confirm a statute's plain meaning. Heritage Farms, Inc. v. Market Ins. Co., 2009 WI 27, ¶ 15, 316 Wis. 2d 47, 762 N.W.2d 652 (relying on statutory history to confirm a statute's plain meaning); Cnty. of Dane, 315 Wis. 2d 293, ¶ 27 (explaining that statutory history is part of a plain-meaning analysis).
¶ 112. After analyzing statutory history, the lead opinion briefly considers legislative history— specifically, comments made by Wisconsin Legislative Council's Insurance Laws Revision Committee. Lead op., ¶¶ 74-76. Because the statutes are unambiguous, the opinion's reason for consulting legislative history also must be to confirm the plain meaning of these statutes. See Kalal, 271 Wis. 2d 633, ¶ 51 ("[L]egislative history is sometimes consulted to confirm or verify a plain-meaning interpretation."); Manitowoc Cnty. v. Samuel J.H., 2013 WI 68, ¶ 27, 349 Wis. 2d 202, 833 N.W.2d 109 (relying on legislative history to confirm plain meaning).
¶ 113. I also briefly discuss the lead opinion's consideration of "consequences of alternative interpretations." Lead op., ¶¶ 79-84. I do not join the lead opinion's analysis of these "consequences." The lead *113 opinion states that our holding might harm the Andersons by depriving them of insurance proceeds from Wisconsin Lawyers Mutual Insurance Company and might encourage insurers to add "within the policy period" reporting requirements to more policies. Lead op., ¶¶ 80-81. The lead opinion then weighs those concerns against the consequences of a contrary holding: transforming all claims-made-and-reported policies into pure claims-made policies and creating an initial grant of coverage for which an insurer did not receive a premium. Lead op., ¶¶ 82, 84. The lead opinion correctly concludes that applying the notice-prejudice statutes to the reporting requirement at issue "would be unreasonable." Lead op., ¶ 84. See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 30 (Mass. 1990) ("A requirement that an insurer on a [claims-made-and-reported] policy must show that it was prejudiced by its insured's failure to report a claim within the policy period . . . would defeat the fundamental concept on which [claims-made-and-reported] policies are premised. The likely result would be that [claims-made-and-reported] policies, which offer substantial benefits to purchasers of insurance as well as insurance companies, would vanish from the scene. It would be unreasonable to think that the Legislature intended such a result."). However, the lead opinion's analysis of "consequences" is not in step with a more traditional plain-meaning analysis. As a result, I depart from the lead opinion so as to avoid confusion.
¶ 114. While courts interpret statutes "to avoid absurd or unreasonable results," Kalal, 271 Wis. 2d 633, ¶ 46, it is not the role of the court to weigh the "consequences of alternative interpretations." A court *114 may consider the consequences of a particular interpretation of a statute to determine whether that interpretation would produce an absurd or unreasonable result. Here, however, the lead opinion goes beyond the avoidance of absurd or unreasonable results by weighing the "consequences of alternative interpretations" so to inject a subjective component into an otherwise objective analysis. See Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co., 2014 WI 82, ¶ 165, 356 Wis. 2d 582, 850 N.W.2d 866 (Ziegler, J., dissenting) ("An unpalatable result is not the same as an absurd result. We are to look to the text of the statute to determine whether relief is afforded to the litigants."). I could agree with the lead opinion's analysis in paragraphs 82 and 84 only to the extent that it confirms the notice-prejudice statutes' plain meaning by considering the unreasonable results that a contrary holding would produce. See Samuel J.H., 349 Wis. 2d 202, ¶¶ 24, 26 (confirming plain-meaning interpretation by determining that a contrary interpretation would produce an absurd or unreasonable result).
¶ 115. To be clear, courts should not consider the "consequences of alternative interpretations" when interpreting a statute. Doing so goes beyond the avoidance of unreasonable or absurd results. See Force, 356 Wis. 2d 582, ¶ 165 (Ziegler, J., dissenting). The "consequences of alternative interpretations" language was created by Chief Justice Shirley S. Abrahamson's opinion in State v. Hayes, 2004 WI 80, ¶ 16, 273 Wis. 2d 1, 681 N.W.2d 203. See Hayes, 273 Wis. 2d 1, ¶ 112 (Sykes, J., concurring) (explaining that consideration of consequences of alternative interpretations "is new to our statutory interpretation jurisprudence, and the majority cites no authority for it"). This approach to statutory interpretation is problematic *115 because it involves "a judicial policy judgment based upon a weighing and balancing of competing 'purposes and consequences' of alternative interpretations. This leaves room for the substitution of the judiciary's subjective policy choices for those of the legislature, a phenomenon that a text-based, plain-meaning approach to statutory interpretation seeks to guard against." Id. (Sykes, J., concurring). I agree that the lead opinion's analysis in this regard is problematic.
¶ 116. Although I reject the lead opinion's consideration of "consequences of alternative interpretations," I agree with the lead opinion's conclusion that the notice-prejudice statutes, by their plain meaning, do not apply to the reporting requirement at issue. I also agree with the lead opinion's conclusion, consistent with that plain meaning, that applying these statutes to the reporting requirement at issue would produce unreasonable results. I join that conclusion only to the extent that it can be construed as engaging in a plain-meaning analysis of these unambiguous statutes. This writing is intended make clear the majority opinion of the court.
¶ 117. For the foregoing reasons, I respectfully concur.
¶ 118. I am authorized to state that Justices N. PATRICK CROOKS, PATIENCE DRAKE ROGGENSACK, and MICHAEL J. GABLEMAN join this concurrence.

 Today, three justices join this concurrence. Accordingly, this concurrence represents the majority opinion of the court. The opinion authored by Chief Justice Shirley S. Abrahamson is now the lead opinion.

 When the notice-prejudice statutes apply to a claim, "the determination whether an insurer has been prejudiced by the lack of timely notice is essentially a question of fact." Neff v. Pierzina, 2001 WI 95, ¶ 47, 245 Wis. 2d 285, 629 N.W.2d 177. " '[W]e will uphold the trial court's factual determinations underlying the question of prejudice unless clearly erroneous.' " Id., ¶ 44 (quoting Rentmeester v. Wis. Lawyers Mut. Ins. Co., 164 Wis. 2d 1, 8-9, 473 N.W.2d 160 (Ct. App. 1991)).